Opinion issued December 22, 2011



In The

Court of
Appeals

For The

First District
of Texas

————————————

NO. 01-10-00194-CV

———————————

Ernest Ray Koonce, Appellant

V.

Barclays Capital Real Estate
Inc.

D/B/A HomEq Servicing and

Wells Fargo Bank, N.A. AS TRUSTEE
UNDER POOLING AND SERVICING AGREEMENT DATED AS OF APRIL 1, 2005

ASSET-BACKED PASS-THROUGH
CERTIFICATES SERIES 2005-WHQ2, Appellees



 



 

On Appeal from the 127th District
Court

Harris County, Texas



Trial Court Case No. 2007-30212

 



MEMORANDUM OPINION

          Ernest
Ray Koonce appeals from the no-evidence and
traditional summary judgment in favor of Barclays Capital Real Estate Inc.
d/b/a HomEq Servicing (“HomEq”)
and Wells Fargo Bank, N.A. as Trustee under Pooling and Servicing Agreement
Dated as of April 1, 2005 Asset-Backed Pass-Through Certificates Series
2005-WHQ2 (“Wells Fargo”), in his suit as a borrower against the noteholder for damages arising out of alleged violations of
the Texas Deceptive Trade Practices Act, common-law fraud, negligence, and
breach of contract.  In three issues, Koonce challenges (1) whether the trial court erred in
granting a final summary judgment based on substantively defective summary
judgment evidence; (2) whether appellees owned the
note and deed of trust and thus had standing to enforce them; and (3) whether appellees breached or anticipatorily breached the note and
deed of trust and are, therefore, precluded from enforcing them against Koonce.

          We affirm.

BACKGROUND

          In February
2005, Koonce obtained a home loan from Argent Mortgage
Company (“Argent”) which was evidenced by a promissory note and secured by a
deed of trust executed by Koonce.

          In January
2007, Argent executed a Limited Power of Attorney that appointed HomEq, as its mortgage servicer.  Although disputed, Wells Fargo appears to be the
holder of the note, the owner of the note, or both.  Koonce’s last live
pleading recites: “[t]he note has since been sold to Wells Fargo Bank, N.A.
with HomEq Servicing as the loan servicer.”  

          In
April 2006, Koonce sought and was granted a deferral
of his property taxes.  See Tex.
Tax Code § 33.06 (West
2008) (authorizing elderly and disabled property owners to defer collection of
property taxes).  That same month was the first
month he was late paying the house note, followed thereafter by late payments
in June, July, August, and September 2006. 
Each late payment resulted in late charges accruing to his future
payments as set forth in the Deed of Trust. 
Koonce accrued yet another fee for his August
payment when his check for the loan payment was denied for insufficient funds.

          Koonce failed entirely to make his payment due October 1,
2006.  On November 13, forty-four days
after Koonce’s default, HomEq
paid Koonce’s unpaid property taxes for the first
time.  On November 15, HomEq sent Koonce a letter
demanding that he cure the October 1, 2006 default by December 20, 2006.  Koonce wrote a
check for the November payment, but according to his response to appellees’ motion for summary judgment, he elected to
withhold funds for the November payment and that check, too, was denied by the
bank.  The last payment Koonce made on his loan was September 9, 2006.

          The amount Koonce was required to pay increased due to late payments
as well as two bounced checks.  Appellees claim, however, that the first fee applied to Koonce’s loan as a result of unpaid property taxes did not
occur until after December 20, 2006, Koonce’s deadline
to cure the default.  Koonce,
on the other hand, insists that, by means of an escrow account disclosure
statement dated November 17, 2006, appellees notified
him that his monthly payments were being adjusted to cover the increase for the
payment of taxes and insurance and the future payment of taxes and insurance.

          In May 2007, Koonce filed a pro se
action against appellees asking for a declaratory
judgment “uphold[ing] the provisions of the Texas
Property Tax Code, in particular Section 33.06, and instruct[ing] Defendant HomEq, Et. Al., to return to the original amount
of the Plaintiff’s mortgage” and for injunctive relief preventing appellees from pursuing foreclosure.  Koonce also asked
for unspecified “real and punitive” damages of $250,000.  Appellees filed a
general denial in response.  In March
2009, Koonce amended his original petition.  He removed his request for declaratory
judgment and injunctive relief and instead sought damages under the Texas
Deceptive Trade Practices Act, for common law fraud, negligence, and breach of
contract.  He asked for treble damages,
exemplary damages, and attorneys’ fees.

In June 2009, appellees
filed a motion for summary judgment.  Koonce filed a response to appellees’
motion.  The trial court granted appellees’ motion for summary judgment on July 17,
2009.  Koonce
then moved for a new trial on August 17, 2009. 
The trial court granted the motion for new trial on October 21,
2009.  Thereafter, in February 2010, appellees filed an amended no-evidence and traditional
motion for summary judgment, to which Koonce
responded.  The trial court granted this
motion on February 26, 2010, and this appeal followed.  

STANDARD OF REVIEW

          We review the
trial court’s grant of summary judgment de
novo.  Valence Operating Co. v. Dorsett, 164
S.W.3d 656, 661 (Tex. 2005).  After
an adequate time for discovery, a party may move for a no-evidence summary
judgment on the ground that no evidence exists of one or more essential
elements of a claim on which the adverse party bears the burden of proof at
trial.  Tex.
R. Civ. P. 166a(i); see Flameout Design & Fabrication, Inc.
v. Pennzoil Caspian Corp., 994 S.W.2d 830, 834 (Tex. App.—Houston [1st
Dist.] 1999, no pet.).  The burden then
shifts to the nonmovant to produce evidence raising a
genuine issue of material fact on the elements specified in the motion.  Tex. R.
Civ. P. 166a(i); Mack Trucks, Inc. v. Tamez,
206 S.W.3d 572, 582 (Tex. 2006).  The
trial court must grant the motion unless the nonmovant
presents more than a scintilla of evidence raising a fact issue on the
challenged elements.  Flameout Design & Fabrication, 994
S.W.2d at 834; see also Merrell Dow Pharms., Inc. v. Havner, 953
S.W.2d 706, 711 (Tex. 1997) (“More than a scintilla of evidence exists when the
evidence supporting the finding, as a whole, ‘rises to a level that would
enable reasonable and fair-minded people to differ in their conclusions.’”  (quoting Burroughs
Wellcome Co. v. Crye,
907 S.W.2d 497, 499 (Tex. 1995))).  To
determine if the nonmovant has raised a fact issue,
we review the evidence in the light most favorable to the nonmovant,
crediting favorable evidence if reasonable jurors could do so, and disregarding
contrary evidence unless reasonable jurors could not.  See
Mann Frankfort Stein & Lipp Advisors, Inc. v.
Fielding, 289 S.W.3d 844, 848 (Tex. 2009) (citing City of Keller v. Wilson, 168 S.W.3d 802, 827 (Tex. 2005)). 

To prevail
on a traditional summary judgment motion, a movant
has the burden of proving that it is entitled to judgment as a matter of law
and that there is no genuine issue of material fact.  Tex. R. Civ. P. 166a(c); Cathey v. Booth, 900 S.W.2d 339, 341 (Tex.
1995).  When
deciding whether there is a disputed, material fact issue precluding summary
judgment, evidence favorable to the non-movant will
be taken as true.  Nixon v. Mr. Prop. Mgmt. Co., 690 S.W.2d 546, 548–49 (Tex. 1985).  Every reasonable inference must be indulged
in favor of the non-movant and any doubts must be
resolved in its favor.  Id. at 549.  When, as here, the trial court’s summary
judgment does not state the basis for the court’s decision, we must uphold the
judgment if any of the theories advanced in the motion are meritorious.  Provident Life & Accident Ins. Co. v. Knott, 128 S.W.3d 211,
216 (Tex. 2003).

 

The Summary Judgment Evidence

In
his first issue, Koonce challenges the trial court’s
grant of final summary judgment for appellees on the
basis that the summary judgment evidence was substantively defective.  He claims that the affidavit of Jill Orrison, the custodian of records for HomeEq,
is defective because it fails to state how she has personal knowledge of the
facts stated therein.  Furthermore, Koonce claims that the fact that the copies of the exhibits
referenced in Orrison’s affidavit were attached to
the motion for summary judgment, and not the affidavit itself, amounts to a
substantive defect in the summary judgment evidence.  On this basis, Koonce
asks that we reverse the trial court’s rendition of summary judgment. 

A.  
The
Law

In a summary judgment hearing, the
trial court’s decision is based upon written pleadings and written evidence
rather than live testimony.  See Tex.
R. Civ. P. 166a(c).  “To constitute competent summary judgment
evidence, affidavits must be made on personal knowledge, setting forth such
facts as would be admissible in evidence, and must affirmatively show that the
affiant is competent to testify to matters stated therein.”  Patrick
v. McGowan, 104 S.W.3d 219, 222 (Tex. App.—Texarkana 2003, no pet.); see Tex.
R. Civ. P. 166a(f); United Blood Servs. v. Longoria, 938
S.W.2d 29, 30 (Tex. 1997).   

 

1.    
Standard of Review for Admission or Exclusion of
Summary Judgment Evidence

 

We review the trial court’s rulings
concerning the admission or exclusion of summary judgment evidence for an abuse
of discretion.  See, e.g., Fairfield Fin. Group, Inc. v. Synnott,
300 S.W.3d 316, 319 (Tex. App.—Austin 2009, no pet.) (admission
of summary judgment evidence); Cruikshank
v. Consumer Direct Mortgage, Inc., 138 S.W.3d 497, 499 (Tex. App.—Houston
[14th Dist.] 2004, pet. denied) (exclusion of summary judgment evidence).  An abuse of discretion exists when the
court’s decision is made without reference to any guiding rules and principles
or is arbitrary or unreasonable.  Downer v. Aquamarine
Operators, Inc., 701 S.W.2d 238, 241–42
(Tex. 1985).  We must uphold the
trial court’s evidentiary ruling if there is any legitimate basis for it.  See Owens-Corning Fiberglass Corp. v. Malone, 972 S.W.2d 35, 43
(Tex. 1998).  Furthermore, we will
not reverse a judgment based on a claimed error in admitting or excluding
evidence unless the complaining party shows that the error probably resulted in
an improper judgment.  Tex. R. App. P. 44.1; Malone, 972 S.W.2d at
42.  A successful challenge to a
trial court’s evidentiary ruling requires the complaining party to demonstrate
that the judgment turns on the particular evidence excluded or admitted.  Texas Dep’t of Transp. v. Able, 35 S.W.3d 608, 617 (Tex. 2000).

 

 

2.    
Defects in Substance

Defects in affidavits may be either
defects in “form” or “substance.”  Stone v. Midland Multifamily
Equity REIT, 334 S.W.3d 371, 374 (Tex. App.—Dallas 2011, no pet.).  Defects in the substance of an affidavit are
not waived by failure to obtain a ruling from the trial court on an objection
and may be raised for the first time on appeal. 
McMahon v.
Greenwood, 108 S.W.3d 467, 498 (Tex. App.—Houston [14th Dist.] 2003, pet. denied).  A substantive defect is one that leaves the
evidence legally insufficient.  See Marks v. St. Luke’s
Episcopal Hosp., 319 S.W.3d 658, 666 (Tex. 2010) (plurality op.).  An affidavit showing no basis for personal
knowledge is legally insufficient.  Kerlin v. Arias, 274 S.W.3d
666, 668 (Tex. 2008) (per curiam).

An affidavit must disclose the basis
on which the affiant has personal knowledge of the facts asserted.  Radio
Station KSCS v. Jennings, 750 S.W.2d 760, 762 (Tex. 1988).  An affiant’s position or job responsibilities
can qualify the affiant to have personal knowledge of facts and establish how
the affiant learned of the facts.  Valenzuela v. State & Cnty. Mut. Fire Ins. Co., 317 S.W.3d 550, 553
(Tex. App.—Houston [14th Dist.] 2010, no pet.).  A summary judgment affidavit’s failure to
demonstrate a basis for personal knowledge renders it incompetent summary
judgment evidence.  Stone, 334 S.W.3d at 377.  Moreover, conclusory
statements, not supported by factual allegations, are insufficient to support
summary judgment.  Anderson v. Snider, 808 S.W.2d 54, 55 (Tex. 1991); Paselk v. Rabun, 293 S.W.3d 600, 611 (Tex.
App.—Texarkana 2009, pet. denied).

3.    
Defects in Form

A defect in the form of an affidavit,
on the other hand, must be objected to in the trial court and the opposing
party must have the opportunity to amend the affidavit.  See Tex. R. Civ. P. 166a(f);
Stone, 334 S.W.3d at 374.  A complaint that an affidavit contains
hearsay, for example, is an objection to the form of an affidavit.  Green v. Indus. Specialty Contractors, 1 S.W.3d 126, 130 (Tex.
App.—Houston [1st Dist.] 1999, no pet.). 
This includes a complaint that an affidavit of a custodian of records is
insufficient to prove up business records, which amounts to a complaint that
the trial court admitted documents which were hearsay.  To preserve such complaints, it is necessary
to obtain a written ruling overruling the objections.  See, e.g., Dulong v. Citibank (S.D.), N.A., 261 S.W.3d 890, 893
(Tex. App.—Dallas 2009, no pet.). 
The rules of evidence do not require that the qualified witness who lays the predicate for the admission of business records be
the creator of, or have personal knowledge of, the contents of the records; the
witness is only required to have personal knowledge of the manner in which the
records were kept.  See Tex. R. Evid. 803(6), 902(10); see also In re K.C.P., 142 S.W.3d 574, 578 (Tex. App.—Texarkana
2004, no pet.).

 

B.  
Application of Law to Facts

Here, appellees’
summary judgment was supported by the affidavit of Jill Orrison.  Koonce challenges
this affidavit on the basis that it fails to state how Orrison
obtained personal knowledge of the facts stated therein, and that the exhibits
to which her affidavit makes reference were attached to Defendants’ Amended
Motion for Summary Judgment, and not directly to her affidavit.

1.    
Personal Knowledge of Affiant

Orrison’s affidavit reflects that she was
employed as a Litigation Management Liaison for HomEq
and as a mortgage servicer and attorney in fact for Wells Fargo.  It states further that she is fully qualified
and authorized to make the affidavit; that she is the custodian of records for HomEq as servicing agent for Wells Fargo relating to Koonce’s home loan; and that she has personal knowledge of
the facts stated therein.  She then goes
on to state that exhibits A, B, C, D, E and G attached to Defendants’ Amended
Motion for Summary Judgment: 

are true
and correct copies of such documents found in HomEq’s
records.  These pages of records are kept
by HomEq in the regular course of business, and it
was the regular course of business of HomEq for an
employee or representative of HomEq, with knowledge
of the act, event, condition, opinion or diagnosis recorded to make the record
or to transmit information thereof to be included in such record, and the
record was made at or near the time or reasonably thereafter.  The records attached hereto are the originals
or exact duplicates of the originals.

 

Orrison next testifies in her affidavit to
the events reflected in the individual documents.  From paragraphs 3 to 8, she states what the
individual documents reflect and references the pertinent exhibit in each
paragraph.  Only the last paragraph, 9,
contains statements that are not summaries of events reflected by
exhibits.  In that paragraph, she states
that, “Plaintiff failed to remedy the default in accordance with the demands of
HomEq and Well[s] Fargo.  Accordingly, Wells Fargo and HomEq elected to accelerate the entire debt secured by the
Note and Deed of Trust.”  

In her affidavit, Orrison
provides both her position with HomEq (Litigation
Management Liason) and one of her pertinent functions
(custodian of records).  An affiant’s
position with a company can qualify the affiant to have personal knowledge of
facts and establish how the affiant learned of the facts.  See
Stone, 334 S.W.3d at 376.  As Orrison was
Litigation Management Liaison and custodian of records for HomEq
“as servicing agent for Wells Fargo relating to the home loan owed by
Plaintiff, Ernest Ray Koonce,” the evidence is
sufficient to demonstrate that she did, indeed, have personal knowledge of the
exhibits referenced in her affidavit.  To
the extent that her statements in the affidavit reflect knowledge gained from a
reading of the documents to which she makes reference, we overrule Koonce’s issue on this point. 

The last two sentences of Orrison’s affidavit, however, do not reference documents as
to which she is the custodian and state facts without affirmatively showing her
basis for personal knowledge of these facts. 
Nevertheless, a reversal of the judgment is not warranted in this case
because Koonce has not demonstrated that the error
resulted in the rendition of an improper judgment.  See
Tex. R. App. P. 44.1.  We overrule this portion of Koonce’s first issue.

2.    
Exhibits Attached to Motion for
Summary Judgment

Koonce also complains that, because the
exhibits as to which Orrison swears in her affidavit
are attached to Defendants’ Amended Motion for Summary Judgment, as is her
affidavit, and not directly to the affidavit itself, then “the summary judgment
evidence relied upon by the Appellee’s Motion is
substantively defective.”  Koonce seems to argue that this fact makes the actual
documents inappropriate summary judgment evidence.  He also contends, based on this same fact,
that Orrison’s statements in her affidavit regarding
these documents are hearsay and conclusory.  We disagree.

Rule 166a(f)
states that “[s]worn or certified copies of all papers or parts thereof
referred to in an affidavit shall be attached thereto or served
therewith.”  Tex. R. Civ. P. 166a(f).  Orrison’s affidavit
made reference to Exhibits A, B, C, D, E and G “[a]ttached
to Defendants’ Amended Motion for Summary Judgment.”  The affidavit was likewise attached to
Defendants’ Amended Motion for Summary Judgment.  Nothing in the record reflects that the
affidavit, marked Exhibit F, was detached from the exhibits to which it made
reference or in some way separate from them, or was not “served
therewith.”  We conclude that the fact
that the referenced exhibits were served with the affidavit as part of the
motion for summary judgment, and not specifically attached to the affidavit,
does not preclude them from being effective summary judgment evidence.  Accordingly, references to these exhibits
and/or statements of fact made by Orrison on the
basis of these exhibits are neither conclusory nor
hearsay. 

We overrule this portion of Koonce’s first issue.

Standing to Enforce the Note

In his second issue, Koonce claims that the trial court erred in granting
summary judgment for appellees because appellees did not have standing to enforce the Note and
Deed of Trust.

The petition as to which summary
judgment was granted, however, was filed by Koonce,
not appellees, and in that petition Koonce obviously did not attempt to enforce the Note and
Deed of Trust against himself.  Nor did appellees make any such attempt by way of a counter-claim.  Instead, Koonce
brought suit against appellees, in their position as
owner/holder of the Note and Deed of Trust (or, in the case of HomEq, loan servicer for the owner of the note), for
damages.[1]

Furthermore, the petition alleges (1)
violations of the DTPA; (2) common law fraud; (3) negligence; and (4) breach of
contract.  None of these causes of action
turns on any finding that appellees had standing to
enforce the Note and Deed of Trust. 
Instead, each involves damages allegedly suffered by Koonce
and caused by appellees, without reference to appellees’ standing to enforce the Note and Deed of
Trust.  We fail to see how appellees’ standing to enforce the Note and Deed of trust,
or lack thereof, bears on the issue of whether the trial court erred in
granting summary judgment as to Koonce’s claims
against appellees.

We overrule Koonce’s
second issue.

Evidence Concerning Breach or Anticipatory Breach of Contract

In his third issue, Koonce claims that, even if appellees
had standing to enforce the Note and Deed of Trust, the trial court nevertheless
erred in granting summary judgment for appellees
because there was evidence in the record that appellees
breached and/or repudiated the Note and/or Deed of Trust first, thereby
excusing Koonce’s subsequent performance.

 

 

A.  
The Law

To prevail on a breach of contract
claim, a plaintiff must establish that (1) there is a valid, enforceable
contract; (2) the plaintiff performed, tendered performance of, or was excused
from performing its contractual obligations; (3) the defendant breached the
contract; and (4) the defendant’s breach caused the plaintiff injury.  Wincheck v. American
Express Travel Related Servs. Co., 232 S.W.3d
197, 202 (Tex. App.—Houston [1st Dist.] 2007, no pet.).  

One such excuse for performing
contractual obligations is the other party’s breach of contract.  “It is a fundamental principle of contract
law that when one party to a contract commits a material breach of that
contract, the other party is discharged or excused from further performance.”  BFI Waste Sys. of N. Am. v. N. Alamo Water Supply Corp., 251 S.W.3d 30,
30–31 (Tex.
2008) (per curiam).  However, if after
the breach, the non-breaching party continues to insist on performance by the
party in default, “the previous breach constitutes no excuse for nonperformance
on the part of the party not in default and the contract continues in force for
the benefit of both parties.”  Chilton Ins. Co. v. Pate & Pate Enters.,
Inc., 930 S.W.2d 877, 887 (Tex. App.—San Antonio 1996, writ denied)
(quoting Houston Belt & Terminal Ry.
Co. v. J. Weingarten, Inc., 421 S.W.2d 431, 435 (Tex. Civ. App.—Houston
[1st Dist.] 1967, writ ref’d n.r.e.));
see also Gupta v. E. Idaho Tumor Inst.,
Inc., 140 S.W.3d 747, 756 (Tex. App.—Houston [14th Dist.] 2004, pet. denied).  The non-breaching party must thus elect
between two courses of action—continuing performance under the contract or ceasing
to perform.  Henry v. Masson, 333 S.W.3d 825, 840–41 (Tex. App.—Houston
[1st Dist.] 2010, no pet.); Gupta,
140 S.W.3d at 757, n.7; Chilton, 930
S.W.2d at 887.

If the non-breaching party treats the
contract as continuing after the breach, he is deprived of any excuse for
terminating his own performance.  Long Trusts v. Griffin,
222 S.W.3d 412, 415–16 (Tex. 2007) (per curiam); Henry, 333 S.W.3d at 840–41.  The election affects only whether the non-breaching
party is required to perform fully after the breach.  Gupta,
140 S.W.3d at 757, n.7.

Seeking to benefit from the contract
after the breach operates as a conclusive choice depriving the non-breaching
party of an excuse for his own non-performance.  Henry,
333 S.W.3d at 840–41; see also Hanks v. GAB Bus. Services, Inc., 644 S.W.2d 707, 708 (Tex. 1982); Chilton, 930 S.W.2d at 888. 
If the non-breaching party elects to treat the contract as continuing
after a breach and continues to demand performance, it obligates itself to
perform fully.  See Henry, 333 S.W.3d at 840–41; see also Long Trusts, 222 S.W.3d at 415–16 (holding that by
claiming share of lawsuit recovery as damages, which was benefit of bargain,
non-breaching party treated oil and gas operating agreement as continuing and
thus “could not cease to share in the expenses and still insist in sharing in
the recovery”); Hanks, 644 S.W.2d at
708 (holding that non-breaching party waived right to partially rescind
contract when it chose to treat contract for sale of business as continuing, by
retaining all assets of business, and continuing its operation after other party’s
breach of covenant not to compete); Gupta,
140 S.W.3d at 757–58 (holding that party’s failure to comply with agreement not
excused when non-breaching party elected to treat joint venture agreement in
full force and effect after alleged breaches at beginning of agreement and
continued to demand performance of opposing party).

Repudiation or anticipatory breach of
contract is “a positive and unconditional refusal to perform the contract in
the future, expressed either before performance is due or after partial
performance.”  Van Polen v. Wisch, 23 S.W.3d 510, 516 (Tex. App.—Houston [1st Dist.]
2000, no pet.).  In order to
constitute a repudiation or anticipatory breach, the party to the contract must
have absolutely repudiated the contract without just cause.  Id.  

An anticipatory repudiation of the
contract gives the nonrepudiating party the option to
treat the repudiation as a breach, or ignore it and await the agreed upon time
of performance.  Bumb v. Intercomp
Technologies, L.L.C., 64 S.W.3d 123, 124 (Tex. App.—Houston [14th Dist.]
2001, no pet.).  If a party
chooses to file suit after the time for performance of the contract, he elects
to ignore the anticipatory repudiation.  Id. 


He [the nonrepudiating party] remains subject to all his own
obligations and liabilities under it, and enables the other party not only to
complete the contract, if so advised, notwithstanding his previous repudiation
of it, but also to take advantage of any supervening circumstances which would
justify him in declining to complete it.

 

Id. at 125 (quoting Pollack v. Pollack, 39 S.W.2d 853, 857 (Tex. Com. App. 1931,
holding approved)).

B.  
Application of Law to the Facts

Koonce argues that appellees’
failure to recognize his right to defer his taxes under section 33.06 of the
Texas Property Tax Code in April 2006 amounts to a breach and/or repudiation of
the Note and/or Deed of Trust.  Koonce further argues that appellees’
conduct excused his subsequent performance under the contract and  the trial court
erred in concluding that he defaulted on the Note when he failed to make his
October 2006 mortgage payment and entering a final summary judgment for appellees on that basis.

1.    
The Initial Breach of Contract

We will presume, without deciding,
that appellees’ alleged failure to recognize Koonce’s right to defer his taxes amounted to a breach
and/or repudiation of the Note and/or Deed of Trust.  Even so, the issue becomes whether Koonce has presented proof that this breach and/or
repudiation on the part of appellees occurred before Koonce defaulted on the Note.  If not, then Koonce’s
performance under the Note was not excused by any breach of appellees
following Koonce’s default.

The summary judgment evidence and
pleadings herein demonstrate as follows:

1.    
Koonce filed for his tax deferral in April 2006.  

2.    
Koonce failed to make the home loan payment due October 1,
2006.  

3.    
Koonce wrote a check for the November payment, but according
to his Corrected Response to Defendants’ Amended No-Evidence and Traditional
Motion for Summary Judgment, he elected to withhold funds for the November
payment and that check, too, was denied by the bank.  

4.    
On November 13,
2006, forty-four days after Koonce’s default on the home
loan, HomEq paid Koonce’s
unpaid property taxes for the first time. 


5.    
On November 15,
2006, HomEq sent Koonce a
demand letter demanding that he cure the October 1, 2006 default and giving him
thirty-five days from the letter, or until December 20, 2006, to do so. 

6.    
The last payment Koonce made on the home loan was September 9, 2006.  

  

The evidence establishes that Koonce’s breach of contract occurred in October 2006, and
that HomEq first paid Koonce’s
property taxes in November 2006, well after Koonce’s
default.  Koonce,
however, claims that appellees’ default did not occur
then, but occurred in April when he notified appellees
about the deferral and they refused to recognize that right.  He alleges that “[t]here is . . . no dispute
. . . that they refused to recognize that right on several occasions but
certainly in April, 2006 . . . .” 

Koonce, however, fails to direct us to any
summary judgment proof establishing that appellees
“refused to recognize that right” as of April 2006.  Appellees’ payment
of Koonce’s taxes, which may be considered a tacit
refusal to recognize his right to defer his taxes, did not occur until forty-four
days after Koonce’s default on the loan.  Accordingly, Koonce
has failed to present evidence raising a fact issue on whether he was excused
from performing his contractual obligations. 
For this reason, we overrule Koonce’s third
issue herein.

2.    
Koonce’s Continued Performance Under the Note

 
Even if Koonce had established that appellees anticipatorily breached their contract in April
2006, Koonce’s continued performance under the
contract would preclude his using such a breach as an excuse for his own non-performance
in the future.  As noted above, if the
non-breaching party treats the contract as continuing after the breach, he is
deprived of any excuse for terminating his own performance.  Long
Trusts, 222 S.W.3d  at 415–16. 
If a party elects to continue his performance under the contract, he
chooses to ignore the anticipatory repudiation and he remains “subject to all
his own obligations and liabilities under it . . . .”  Bumb, 64 S.W.3d at 125.  

Koonce acknowledges that he made “each and
every payment up until the October 1st [2006] payment.”  Thus it is undisputed that he continued to
perform under the Note even after appellees’ alleged
repudiation in April 2006.  Accordingly,
he had no legal excuse for his own default under the Note.  For this reason as well, we overrule Koonce’s third issue. 

CONCLUSION

          We affirm the
judgment of the trial court.

 

 

                                                                   Sherry
Radack

                                                                   Chief
Justice 

 

Panel consists of Chief Justice Radack and
Justices Sharp and Brown.

 

Justice Sharp, concurring in the judgment
only.

 

 

 











[1]           Indeed, on page 3 of the petition, Koonce alleged that “[t]he note has since been sold to
Wells Fargo Bank, N.A., with HomEq Servicing as the
loan servicer.”