142 S.W.3d 574 (2004)
In the Interest of K.C.P. and J.D.P., Children.
No. 06-04-00009-CV.
Court of Appeals of Texas, Texarkana.
Submitted July 28, 2004.
Decided August 9, 2004.
*577 R. Wesley Tidwell, Ellis, Young & Tidwell, LLP, Paris, for appellant.
John M. Gascoigne, Regional Atty., DFPS, Beaumont, Cynthia L. Braddy, Asst. County Atty., Paris, for appellee.
George L. Preston, Paris, for ad litem.
Before MORRISS, C.J., ROSS and CARTER, JJ.

OPINION
Opinion by Justice CARTER.
A jury found that Cynthia Parker's parental rights to her children, K.C.P. and J.D.P., should be terminated. She argues that several errors were committed at the trial and requests this Court to reverse the order of termination. The issues are:
1. Were records of drug tests improperly admitted as business records?
2. Were drug treatment records improperly admitted, violating a federal statute?
3. Was the guardian ad litem properly excused from the rule concerning separation of witnesses?
4. Should an assistant county attorney have been allowed to testify as a legal expert?
5. Should a drug rehabilitation counselor have been excluded from testifying due to an attorney-client privilege?
The evidence showed that Parker had a history of drug abuse. It was alleged she left her two young children with her adoptive parents for extended periods of time. Her sister ultimately contacted Child Protective *578 Services (CPS), which obtained temporary custody and placed the children in foster care. Eventually, CPS filed suit to terminate Parker's parental rights. A major portion of the trial concerned Parker's alleged drug abuse. The first issue concerns admission of records of drug tests.

1. Were records of drug tests improperly admitted as business records?
Exhibit 14 was a record from Dr. Kyle Jones revealing the result of drug tests. Exhibits 15 through 17 are records of drug tests from the Texas Alcohol and Drug Testing Services. Attached to each of these records was an affidavit from the custodian stating the records were business records. The first complaint is that a proper predicate was not laid for the introduction of the records.
The Texas Rules of Evidence allow the admission of records kept in the course of regularly conducted business activities. TEX.R. EVID. 803(6). To be properly admitted under this rule, the proponent must prove that the document was made at or near the time of the events recorded, from information transmitted by a person with knowledge of the events, and made or kept in the course of a regularly conducted business activity unless the source of information or the method or circumstances of preparation indicate a lack of trustworthiness. Id. The predicate for admission of a business record may be established by an affidavit that complies with TEX.R. EVID. 902(10). Id. The predicate witness does not have to be the record's creator or have personal knowledge of the contents of the record. Brooks v. State, 901 S.W.2d 742, 746 (Tex.App.-Fort Worth 1995, pet. ref'd). The witness is only required to have personal knowledge of the manner in which the records were prepared. Id. Rule 902(10)(b) provides a sample form of an affidavit that complies with the rule and states that "an affidavit which substantially complies with the provisions of this rule shall suffice." TEX.R. EVID. 902(10)(b). The affidavit provided here is substantially the same as the form provided in the rule.

a. Preservation
Parker objected, as follows, to the records:
[W]e object although theyshe's filing them as business records, she still has to satisfy all the other evidentiary requirements including hearsay, foundation, chain of custody, 702, 703 I believe also should be included. Just throwing the documents up is not a proper foundation for these matters, and we would strenuously object to their admission.
The father's counsel objected as follows:
Join in that objection and would add that some of these testing [sic] once again is off-site testing. So the chain of custody is very relevant, and there's not an agency relationship established although it's alleged. Those obviously are subcontractors or people they're contracting that matter out to. So just because you say it's a business record and you have somebody sign a piece of paper, that doesn't make the grade.
Parker's counsel:
I'd also point out that these are being proposed as business records but not as medical records. And looking at the affidavit, it's not a proper affidavit in regards to any of the qualifications especially delivering a medical opinion as to whether or not a person has passed a drug test.
Clearly, the exhibits complained of are business records from Dr. Jones and the Texas Alcohol and Drug Testing Services. On appeal, Parker is complaining that the drug tests were not actually conducted by *579 the entities that provided the records, that the custodian could not testify the tests were standard for the field, that he had personal knowledge of the tests and results, and that there was an insufficient chain of custody to show the tests were actually of Parker's hair or urine. The initial question is whether these complaints have been preserved for appeal.
TEX.R.APP. P. 33.1 requires a complaint be made to the trial court that states the grounds of the complaint with sufficient specificity to make the trial court aware of the complaint unless it is apparent from the context. The complaint on appeal essentially is that of hearsay within hearsay or "layered hearsay."
Although the objections were somewhat imprecise, we believe they are sufficient to bring this matter to the attention of the trial court. Counsel brought to the court's attention that the four complained-of exhibits were medical test records not prepared by the particular entities that produced them, and that there was no evidence to show how the drug tests were conducted or that the methods used were reliable and that they contained medical opinions.

b. Trustworthiness Requirement Civil vs. Criminal Standard
Counsel argues that the trial court abused its discretion by admitting the evidence when the State failed to provide any evidence showing either the types of tests administered or whether they were properly administered. Counsel's factual assertions are accurate. We are now left to address the question of whether a court could conclude over objection that drug test results are admissiblewhen there is nothing proffered beyond the bare results themselves. The critical question is whether the statements (the drug test results) showed sufficient indicia of trustworthiness or reliability to bring them within an exception to the hearsay rule.
There is a distinction in the treatment of this issue based on whether the case is civil or criminal in nature. Some civil cases have found business records containing laboratory tests are admissible by showing where the specimen was drawn, that it was sent to a laboratory, and that a medical doctor analyzed it and reported the results. March v. Victoria Lloyds Ins. Co., 773 S.W.2d 785, 788 (Tex.App.-Fort Worth 1989, writ denied) (citing Missouri-Kansas-Texas R.R. Co. v. May, 600 S.W.2d 755, 756 (Tex.1980)). This distinction in criminal and civil cases was noted in Lynch v. State, 687 S.W.2d 76, 77 (Tex. App.-Amarillo 1985, pet. ref'd).
Criminal cases require more, as evidenced by cases such as Philpot v. State, 897 S.W.2d 848, 852 (Tex.App.-Dallas 1995, pet. ref'd), and Strickland v. State, 784 S.W.2d 549, 553 (Tex.App.-Texarkana 1990, pet. ref'd).
In Strickland, we found that test results were admissible as business records when the testifying witness was able to testify that the tests
were standard tests for a particular substance, made by a person who had personal knowledge of the test and test results, and that the results of the tests were recorded on records kept in the usual course of business of the laboratory.
Strickland, 784 S.W.2d at 553.
In Scherl, we recognized that intoxilyzer test results are admissible when it is shown that they were performed in accordance with statutory guidelines. Scherl v. State, 7 S.W.3d 650, 652 (Tex.App.-Texarkana 1999, pet. ref'd). We have thus previously recognized the need to show, not merely that the test results had been properly preserved or generated, but also that *580 they were produced by the use of proper procedures and methods. In this case, none of those requirements were met.
Here, there is no evidence to show that the sponsoring witness had personal knowledge of how the tests were conducted, or even to clearly show which variation of drug test was used. There is nothing to show whether there were devices used in conducting the tests, or whether they were properly supervised or maintained, whether they were operated by a person who was competent to do so, or whether these were standard tests for the substance.
There is no evidence about the types of machines used to conduct the tests or the methods used by the independent laboratories that conducted the tests. The representatives of the business entities who held the records admitted that they had no knowledge of these matters, and there was no effort made to provide any such information to the court through any other method.
In Philpot, the State introduced a parole file containing laboratory tests, which were sponsored only by the parole officer. In holding the tests inadmissible, the court found that there was no evidence establishing reliability of the tests from the laboratory. Specifically, there was no evidence that the tests were standard tests for this controlled substance. Philpot, 897 S.W.2d at 852. The Dallas court cited this Court's opinion in Strickland, where we held that one predicate for admission of laboratory tests was that the tests were standard tests for a particular substance. In Strickland, the witness, a qualified chemist, testified that standard procedures were followed in analyzing the substance, as well as meeting the business record requirements. This showed compliance with the Rule 803(6) requirement and an adequate indicia of trustworthiness. In this case, this requirement is not met. Since this is a termination of parental rights case, we believe the test for admissibility of these records should comply with the rule as stated in criminal cases.
The rights involved in a termination of parental rights case are "more [important] than any property right." In re J.F.C., 96 S.W.3d 256, 273 (Tex.2002). Due process requires that the issue be established by clear and convincing evidence, instead of the normal civil standard. TEX. FAM.CODE ANN. § 101.007 (Vernon 2002). When judging the sufficiency of the evidence, courts must apply a more stringent standard than in other civil cases. In re C.H., 89 S.W.3d 17, 25 (Tex.2002). In light of these distinguishing features of termination of parental rights cases to other civil cases, we deem it inappropriate to apply the more relaxed standard in determining the admissibility of these records.
It is uncontradicted that no evidence was presented regarding the qualifications of the persons who tested the specimens, the types of tests administered, or whether such tests were standard for the particular substance. We believe that admitting drug tests in a termination of parental rights case with no information as to the qualifications of the person or equipment used, the method of administering the test, and whether the test was a standard one for the particular substance indicates a lack of trustworthiness of the tests and that admission of such evidence is an abuse of discretion.

c. Harm
The remaining question is whether the error requires reversal pursuant to TEX.R.APP. P. 44.1(a)(1). Counsel argues that it does, because the State's main argument in this case was that Parker was a drug addict who was unable or unwilling to place her children on an equal footing with her desire for methamphetamines. We *581 agree that the improper introduction of four positive drug tests would tend to prejudice the jury against Parker. The question under the rule, however, is whether the error probably caused the rendition of an improper judgment.
In reviewing the record to determine harm, we also look at the other evidence properly admitted at trial. See Holmes v. Concord Homes, Ltd., 115 S.W.3d 310, 318 (Tex.App.-Texarkana 2003, no pet.). In this case, Parker did not even attempt to truly contest the evidence that she had a serious problem with the regular use of intravenous methamphetamine. Counselors testified regarding track marks on her arm, about her admissions on more than one occasion that she was using drugs, that she recognized she needed to get off the drugsand her demonstrated inability to do so for more than a short time. Parker also admitted to a counselor that she used methamphetamine and heroin to a counselor, and that she had been injecting methamphetamine almost daily.
Additionally, as we explain in the next section of this opinion, we have determined the trial court did not err by admitting the lengthy file from Northeast Texas Council on Alcohol and Drug Abuse (NETCADA) as a business record. That file contains the results of other drug tests and a letter by Parker admitting extensive drug use and acknowledging her long-term difficulties in avoiding the use of drugs.
In light of the entirety of the evidence, we cannot conclude that the error was such as to probably cause the rendition of an improper judgment.

2. Were drug treatment records improperly admitted in violation of a federal statute?
Parker next contends the trial court erred by admitting into evidence a 245-page file produced by the Northeast Texas Council on Alcohol and Drug Abuse. The file was the complete record of the results of Parker's therapy and drug treatment program with the representatives of that agency. It includes psychological tests and their results, drug tests, counselors' notes regarding Parker's treatment program and her progress, medical evaluations, and letters and other writings made by Parker at the request of the counselors as part of the treatment program.
Parker argues on appeal that the file was protected and made confidential by federal law and that the court erred by admitting it into evidence. She relies on 42 U.S.C.A. § 290dd-2 (West 2003) as authority for her position. Because the application of the statute is critical to her contention, the relevant portions are reproduced in full.[1]
(a) Requirement
Records of the identity, diagnosis, prognosis, or treatment of any patient which are maintained in connection with the performance of any program or activity relating to substance abuse education, prevention, training, treatment, rehabilitation, or research, which is conducted, regulated, or directly or indirectly assisted by any department or agency of the United States shall, except as provided in subsection (e) of this section, be confidential and be disclosed only for the purposes and under the circumstances expressly authorized under subsection (b) of this section.
(b) Permitted Disclosure

*582 ....
(2) Method of Disclosure
Whether or not the patient ... gives written consent, the content of such record may be disclosed as follows:
....
(C) If authorized by an appropriate order of a court of competent jurisdiction granted after application showing good cause therefor, including the need to avert a substantial risk of death or serious bodily harm. In assessing good cause the court shall weigh the public interest and the need for disclosure against the injury to the patient, to the physician-patient relationship, and to the treatment services. Upon the granting of such order, the court, in determining the extent to which any disclosure of all or any part of any record is necessary, shall impose appropriate safeguards against unauthorized disclosure.
42 U.S.C.A. § 290dd-2.
We note that there are two separate sets of records discussed by appellant's counsel, but only one of those was admitted and is before us for review. Initially, there was a pretrial hearing on the State's request for an order directing the Oak Haven Recovery Center to produce records in connection with classes Parker attended there. The court granted a protective order sought by Parker to keep the file out of evidencebut noted that it might reconsider the issue if Parker testified and counsel believed the file would contain records contradicting her testimony (in connection with classes taken by Parker at the facility). That did not occur.
Later, however, the State offered this file from NETCADA, which contained much of the same types of information, and which contained at least some documents referring to the Oak Haven Recovery Center. Parker made extensive objections to the admission of the file, based on the statute cited above. The court ultimately overruled the objection and admitted it into evidence.
The State first argues that Parker failed to show that the statute would apply because there is nothing in the record to show NETCADA is an organization that falls within its ambit. Specifically, the State argues that the record does not show that NETCADA is an organization that is "conducted, regulated, or directly or indirectly assisted by any department or agency of the United States." Id. Under the statute, if that preliminary requirement is not met, then the remainder of the statute does not apply.
Although the State is correct in stating that there is no testimony or documentary evidence directly addressing this matter, we must recognize that the file contains a number of documents (most of which are form releases) generated by NETCADA and signed by Parker containing language stating that the information is "protected under the federal regulations governing Confidentiality of Alcohol and Drug Abuse Patient Records, 42 CFR part 2...." Although this does not directly show that the entity was within the umbrella of the federal statute, it is evidence that the entity believed that the statute applied and therefore restricted its release of confidential informationand that it so informed its clients. We also note that this aspect of the statute was not raised by the State at trial as a reason to support admission of the evidence and that it was not addressed in any respect.
We believe this is sufficient to show that, in this instance, NETCADA falls into the category of entities set out by the statute. Thus, any release of confidential information *583 by the entity was required to be as permitted by the statute.
We also recognize that the objection, as eventually presented to the court, involved all of the documents contained within the file and did not specify documents for separate, individualized objections. A general objection to evidence as a whole, which does not point out specifically the objected-to portion, is properly overruled if any part of that evidence is admissible. Speier v. Webster Coll., 616 S.W.2d 617, 619 (Tex.1981); Gen. Motors Corp. v. Harper, 61 S.W.3d 118, 126 (Tex.App.-Eastland 2001, no pet.). Thus, even if portions of the evidence could have been subject to effective objection beyond the reach of the general objection to admission of the file as a whole, the failure to make those specific objections and then bring those forward for review would properly result in a conclusion they were admissible.
The State argued at trial that the waivers signed by Parker contained within the records served to release them for trial purposes. On appeal, the State's position is somewhat different. The State now takes the position that:
1. There was no need for a specific written order finding good cause to release the documents because
A. as a policy matter, the need of the State to ensure the safety and best interests of the children must control over any right to confidentiality on the part of the parent, or
B. because the documents were created, necessarily, as part of a court-instigated plan to assist Parker in obtaining parenting skills and/or substance control, the court had the authority to consider them, or
C. because Parker had waived her right to confidentiality by signing formal waivers to CPS and Sherry Pugh (counselor) as part of a plan to regain custody of her children.

Analysis
We first address the State's contention that the policy interests protecting children controls to the exclusion of the mother's interest in confidential drug treatment. We are not prepared to go so far as did the Indiana Court of Appeals in Carter v. Knox County Office of Family & Children, 761 N.E.2d 431 (Ind.Ct.App.2001), in that regard.
In determining whether a trial court properly admitted documents similar to those in this case, the Indiana court reasoned that the court's need to serve the interests of the child clearly outweighed any confidentiality to which the parent may have been entitledeven though the trial court did not follow the statutory procedure in reaching its decision. The appellate court held in the alternative that the mother had waived her rights when the documents were produced and used in a prior proceeding before the filing of the termination petition. Id. at 438. That court essentially stated that the procedural safeguards of the federal rule were meaningless and that the type of case involved necessarily required the documents to be produced in all instances.
The State also directs us to In re D.D.S., 869 P.2d 160 (Alaska 1994), in support of its position. In that termination proceeding, a trial court refused to order production of documents pursuant to the federal statute. The Alaska Supreme Court found that a statutory state confidentiality privilege was inapplicable in termination proceedings because of the compelling interest in protecting children. The court then went on to recognize that the state statute did not establish a privilege precluding the admission of alcohol treatment records, *584 but that, under federal law, they could only be disclosed on a showing of good cause. The court noted the trial court had refused to order the documents produced and had not reached the issue of "good cause" as required by the federal statute. The case was reversed and the cause remanded for a hearing on that issue.
We acknowledge that, in situations involving termination of parental rights, evidence of this type would typically be of considerable importance to a fact-finder charged with the duty of determining whether a child should be permanently removed from the parent's custody. We also acknowledge this would normally provide the "good cause" required by the statute. We are not, however, willing to ignore the plain language of the federal statute and allow the unfettered introduction of such evidence without the judicial determination required by the statute. The statute requires an application to an appropriate court, showing good cause, and provides that, if good cause is shown, the court shall order disclosure only to the extent that disclosure of all or part of the record is necessary, along with imposing safeguards against unauthorized disclosure. In the course of an extensive discussion of the objections, the State asked the court to go forward with an order under the federal statute and argued that good cause existed for the release of the documents because of the need for disclosure as compared to the potential for injury to Parker.
There is no written order, or specific oral order by the court finding that there was good cause for the admission of the evidence. We do not find that the court was statutorily required to enter a written or specific oral order. The "good cause" requirement, in this context, is essentially a balancing test. The court is to balance the right to rely on confidentiality on the part of the parent against the needs of the children, and the potential dangers to them, in light of the public policies designed to protect children. We therefore find it appropriate to review the trial court's decision in the form of a review of that balancing action.
The context of such a review is more familiar when dealing with unfair prejudice versus probative value analysis. See TEX.R. EVID. 403. The general rules for review provide that, when admitting evidence, the trial court does not sua sponte engage in balancing the probative value against the prejudice, but does so only on sufficient objection invoking Rule 403 by the party opposing admission of the evidence. Once the rule is invoked, however, the trial court has no discretion as to whether to engage in the balancing process. Id.[2] In this case, the objection was sufficient and the matter was clearly brought to the trial court's attention.
In that context, unless the record shows the trial court did not perform the balancing test, courts find no error when the trial court simply listened to the defendant's objections, then overruled them. *585 Rojas v. State, 986 S.W.2d 241, 250 (Tex. Crim.App.1998); Santellan v. State, 939 S.W.2d 155 (Tex.Crim.App.1997).
Similarly, in this case, the matter was presented to the trial court, and the entity appeared with the records at trial without requiring the order to which it was clearly entitled before production was appropriate.
One of the multitude of reasons that may justify termination of parental rights includes the parent's use of a controlled substance in a manner that endangered the health or safety of the child, combined with a failure to complete a substance abuse treatment program. See TEX. FAM. CODE ANN. § 161.001 (Vernon 2002). Further, the information contained within the documents in question provides insight as to the nature, mindset, and behavior of the parent that would be of considerable use to a fact-finder in determining whether Parker's parental rights should be terminated.
As with most evidentiary decisions, a trial court's ruling applying a balancing test is only reversed for abuse of discretion. See Mozon v. State, 991 S.W.2d 841, 847 (Tex.Crim.App.1999) (applying that test to a Rule 403 analysis).
We conclude the court adequately engaged in the requisite balancing test, as requested by counsel and required by the statute. We find the evidence supports that determination, and thus the court did not abuse its discretion by admitting the documents into evidence. The contention of error is overruled.

3. Was the guardian ad litem properly excused from "the Rule" concerning separation of witnesses?
Parker next contends the case should be reversed because Sharon Eubanks, a representative of CASA, who was also the guardian ad litem for the children, was allowed to be present during the trial. Parker contends Eubanks was subject to the Rule[3] and should have been excluded from the courtroom during the testimony of the other witnesses.
TEX. FAM.CODE ANN. § 107.002(c)(4), and (6) (Vernon Supp.2004) specifically provide that a guardian ad litem is entitled to attend all legal proceedings in a case and to testify in court regarding the guardian's recommendation.
The Code Construction Act, TEX. GOV'T CODE ANN. § 311.026 (Vernon 1998), provides that, where general provisions conflict with special provisions, the specific controls. In this case, the specific provision of the Texas Family Code prevails over the more general language of the Texas Rule of Evidence. Thus, the trial court did not err by abiding by the requirement of the Code and allowing the guardian ad litem to be present during the course of the trial. The contention of error is overruled.

4. Should an assistant county attorney have been allowed to testify as a legal expert?
Parker next contends the court erred by allowing an assistant county attorney to testify concerning the application of parole law to the father of the children, who is presently in prisonand who is, under the parole laws, not eligible for parole until he has actually served thirty years in prison. Counsel for Parker objected on the basis that he believed the assistant county attorney should not have been called to explain the law to the jury. Parker argues on appeal that TEX. DISCIPLINARY R. PROF'L CONDUCT 3.08, reprinted *586 in TEX. GOV'T CODE ANN., tit. 2, subtit. G app. A (Vernon 1998) (TEX. STATE BAR R. art. X, § 9) prohibits such testimony.
However, as pointed out by the State, the father, who was the subject of the testimony, has not appealed. Any potential for harm to the mother from testimony about the offense, in which she was not implicated, is exceedingly slight. Even if error is present, it is harmless. The contention of error is overruled.

5. Should a drug rehabilitation counselor have been excluded from testifying due to an attorney-client privilege?
Parker finally argues the trial court erred by allowing a counselor to testify, when that counsel was associated with Parker's original attorney.
Deb Brookshire, a counselor for Family Haven, testified at some length about Parker's counseling and the services provided by the entity, including food, clothing, transportation for job applications, housing, and legal services. From her testimony, it appears the entity did not provide drug counseling, but instead, after recognizing a problem, referred drug counseling to NETCADA. Defense counsel set out his understanding of the relationship between the parties and asked Brookshire to correct any misstatements on his part. An attorney, Max Worrell, was a contract attorney employed by Family Haven, while Brookshire was a counselor also employed by Family Haven. She testified that, although she referred Parker to Worrell, she provided Worrell with no access to information obtained through counseling.
Parker relies on the privilege set out by TEX.R. EVID. 503. That rule provides that a client has a privilege
to prevent any other person from disclosing confidential communication made for the purpose of facilitating the rendition of professional legal services to the client:
(A) between the client or a representative of the client and the client's lawyer or a representative of the lawyer;
(B) between the lawyer and the lawyer's representative;....
TEX.R. EVID. 503(b)(1)(A), (B).
In this case, although Brookshire was an employee of the same entity which contracted with the attorney to provide legal services, she does not fall within the definition of a "representative of the lawyer." The rule identifies such a person as "one employed by the lawyer to assist the lawyer in the rendition of professional legal services." TEX.R. EVID. 503(a)(4)(A).
The record does not support any suggestion Brookshire falls within that category. The contention of error is overruled.
We affirm the judgment.
NOTES
[1] The State also references 42 C.F.R. § 2.1(b)(2)(C) (2004) as support, but that code provision does no more than refer verbatim to the words of the statute. It provides no additional information or direction for application of the statute.
[2] Similarly, the Texas Court of Criminal Appeals held that the test for good cause for failure to timely prosecute a case should be patterned after that used to determine whether the constitutional speedy trial right has been violated. See Ex parte Martin, 6 S.W.3d 524, 528 (Tex.Crim.App.1999). The court recognized in that context that whether good cause is shown is "a fact-intensive situation [that] calls for a balancing of the interests served by the rule and the interests of the parties." Id. at 529; Ex parte Martin, 33 S.W.3d 843, 845 (Tex.App.-Austin 2000, pet. dism'd); see also Ex parte Taylor, 957 S.W.2d 43, 46 (Tex.Crim.App.1997) (explaining the balancing test used to determine whether good cause exists to disallow cross-examination and confrontation in parole revocation hearings).
[3] TEX.R. EVID. 614, providing that, at the request of a party, the court shall order witnesses excluded so that they cannot hear the testimony of other witnesses.