

IN THE
TENTH COURT OF APPEALS

_____

No. 10-12-00423-CV

IN THE INTEREST OF H.D.B.-M., A CHILD,

_____

From the 74th District Court
McLennan County, Texas
Trial Court No. 2011-2603-3

MEMORANDUM OPINION

In this appeal, appellants, Soundra Lynn Browne and Johnny Mansel Jr.,

challenge the trial court's judgment terminating their parental rights to H.D.B.-M. Both

Browne and Mansel have filed appellate briefs in this matter raising a number of issues.

We affirm.

I.    BACKGROUND[1]

On June 12, 2011, the Texas Department of Family and Protective Services (the

"Department") received a referral alleging neglectful supervision of H.D.B.-.M. by

Browne. The referral indicated that Browne had given birth to H.D.B.-M. and that the

_____

[1] Because this is a memorandum opinion and the parties are familiar with the facts, we will not
recite them here except as necessary to advise the parties of the Court's decision and the basic reasons for
it. *See* TEX. R. APP. P. 47.4.

child was born prematurely and was in the neonatal intensive care unit on a breathing apparatus. Browne admitted to having taken hydrocodone the previous afternoon; she also noted that she sometimes smokes cigarettes. However, Browne denied using drugs or drinking alcohol during her pregnancy, and it was believed that Browne's hydrocodone use likely did not contribute to the premature pregnancy. The referral also indicated that Browne's two previous children had been removed by the Department. One of the removals involved T.B. who was repeatedly sexually assaulted by Browne's brother, who previously lived with Browne and T.B. Browne's brother also did cocaine in the same house in which Browne and T.B. lived.

Representatives from the Department interviewed Browne about H.D.B.-M. Browne was not forthcoming regarding the true father of the child. Mansel had driven Browne to the hospital that day, and he was also interviewed. He provided the Department with a false identity and address. He claimed to be Jimmy Mansel, who is Mansel's brother. According to Department representatives, both Browne and Mansel were trying to obscure the fact that Mansel is the biological father of H.D.B.-M because they were afraid the Department would remove the child. Mansel initially denied that he and Browne were in a relationship, and he denied that the child was his, though he noted that he was willing to help support the child. Mansel later admitted that he is the father of H.D.B.-M.

The Department later learned that Mansel had previously been convicted twice of aggravated sexual assault of his fourteen-year-old cousin.[2] As a result of the convictions, Mansel served fifteen years in the Institutional Division of the Texas Department of Criminal Justice ("TDCJ"). In addition, Mansel was ordered to register as a sex offender. TDCJ labeled Mansel as a moderate risk for re-offending. The Department also discovered that Mansel was HIV-positive and had Hepatitis C at the time of H.D.B.-M.'s conception.

Based on the foregoing, the Department removed the child and placed him in foster care.

Subsequently, on June 20, 2011, the Department filed its original petition, seeking to terminate the parental rights of both Browne and Mansel. For both Browne and Mansel, the Department alleged six grounds for termination.

The case proceeded to trial in late August 2012. At trial, several witnesses testified, including Browne, Mansel, psychologist Dr. James Shinder, and CASA representative Carrie Tatum, among others. At the conclusion of the evidence, the jury found clear and convincing evidence that Browne violated subsections (D), (E), and (O) of Texas Family Code section 161.001 and that the termination of Browne's parental rights was in the child's best interest. *See* TEX. FAM. CODE ANN. § 161.001(D)-(E), (O) (West Supp. 2012). With respect to Mansel, the jury found clear and convincing evidence that he violated subsections (D), (E), (O), and (L) of Texas Family Code section

---

[2] At trial, Mansel denied committing the offenses, but Mansel's written, voluntary statement regarding the offenses was admitted into evidence. In addition, the judgments from the convictions were also admitted into evidence.

161.001 and that the termination of his parental rights was in the child's best interest. *See id.* § 161.001(D)-(E), (O), (L). The trial court adopted the jury's findings and signed the final order of termination on October 30, 2012.

Thereafter, Browne filed a motion for new trial, asserting that the evidence supporting the predicate grounds for termination was legally and factually insufficient. Mansel did not file any post-judgment motions. On November 19, 2012, both Mansel and Browne filed separate notices of accelerated appeal.

## II. STANDARD OF REVIEW AND APPLICABLE LAW

### A. Termination of Parental Rights

A parent's rights to "the companionship, care, custody, and management" of his or her children are constitutional interests "far more precious than any property right." *Santosky v. Kramer*, 455 U.S. 745, 758-59, 102 S. Ct. 1388, 1397, 71 L. Ed. 2d 599 (1982); *In re M.S.*, 115 S.W.3d 534, 547 (Tex. 2003). "While parental rights are of constitutional magnitude, they are not absolute. Just as it is imperative for courts to recognize the constitutional underpinnings of the parent-child relationship, it is also essential that emotional and physical interests of the child not be sacrificed merely to preserve that right." *In re C.H.*, 89 S.W.3d 17, 26 (Tex. 2002); *see In re A.V.*, 113 S.W.3d 355, 361 (Tex. 2003) ("But this Court has stated that 'the rights of natural parents are not absolute; protection of the child is paramount. . . . The rights of parenthood are accorded only to those fit to accept the accompanying responsibilities.'" (quoting *In re J.W.T.*, 872 S.W.2d 189, 195 (Tex. 1993) (citations omitted))). In a termination case, the petitioner seeks not only to limit parental rights but to eradicate them permanently by divesting the parent

and child of all legal rights, privileges, duties, and powers normally existing between them, except for the child's right to inherit. TEX. FAM. CODE ANN. § 161.206(b) (West 2008); *Holick v. Smith*, 685 S.W.2d 18, 20 (Tex. 1985). We strictly scrutinize termination proceedings and strictly construe involuntary termination statutes in favor of the parent. *See Holick*, 685 S.W.2d at 20-21.

In an involuntary termination proceeding brought under section 161.001 of the family code, the Department must establish: (1) at least one ground under subsection (1) of section 161.001; and (2) that termination is in the best interest of the child. TEX. FAM. CODE ANN. § 161.001; *In re J.L.*, 163 S.W.3d 79, 84 (Tex. 2005). Both elements must be established; termination may not be based solely on the best interest of the child as determined by the trier of fact. *See Tex. Dep't of Human Servs. v. Boyd*, 727 S.W.2d 531, 533 (Tex. 1987).

Termination decisions must be supported by clear and convincing evidence. TEX. FAM. CODE ANN. §§ 161.001, 161.206(a). Evidence is clear and convincing if it "will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." *Id.* § 101.007 (West 2008). Due process demands this heightened standard because termination results in permanent, irrevocable changes for the parent and child. *In re J.F.C.*, 96 S.W.3d 256, 263 (Tex. 2002); *see In re J.A.J.*, 243 S.W.3d 611, 616 (Tex. 2007) (contrasting the standards for termination and modification).

**B. Sufficiency of the Evidence in Parental-Termination Cases**

On appeal, both Browne and Mansel focus their complaints on the sufficiency of the evidence establishing predicate violations of section 161.001(1) of the Texas Family Code. In reviewing the evidence for legal sufficiency in parental-termination cases, we must determine whether the evidence is such that a factfinder could reasonably form a firm belief or conviction that the grounds for termination were proven. *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005). We must review all the evidence in the light most favorable to the finding and judgment and assume that the factfinder resolved any disputed facts in favor of its finding if a reasonable factfinder could have done so. *Id.* We must also disregard all evidence that a reasonable factfinder could have disbelieved. *Id.* We must consider, however, undisputed evidence, even if it is contrary to the finding. *Id.*

It is necessary to consider all of the evidence, not just that which favors the verdict. *Id.* However, we cannot weigh witness credibility issues that depend on the appearance and demeanor of the witnesses, for that is within the factfinder's province. *Id.* at 573-74. And even when credibility issues appear in the appellate record, we must defer to the factfinder's determinations as long as they are not unreasonable. *Id.* at 573.

In reviewing the evidence for factual sufficiency, we must give due deference to the factfinder's findings and be careful to not supplant the factfinder's judgment with our own. *In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006). We must determine whether, on the entire record, a factfinder could reasonably form a firm conviction or belief that the parent violated the relevant conduct provisions of section 161.001(1) and that the termination of the parent-child relationship would be in the best interest of the child. *In*

*re C.H.*, 89 S.W.3d at 28.  If, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction in the truth of its finding, then the evidence is factually insufficient.  *In re H.R.M.*, 209 S.W.3d at 108.

### III.    BROWNE'S APPELLATE COMPLAINTS

In three issues, Browne challenges the sufficiency of the evidence supporting the jury's findings that she violated three provisions of section 161.001(1).  In her fourth issue, Browne argues that the trial court abused its discretion by failing to exclude Tatum from the courtroom pursuant to Texas Rule of Evidence 614.  *See* TEX. R. EVID. 614.  As a preliminary matter, we will address Browne's fourth issue first.

### A.    The Rule

Texas Rule of Evidence 614 and Texas Rule of Civil Procedure 267 (also known as "the Rule") provide for the exclusion of witnesses from the courtroom during trial.  *See id.*; *see also* TEX. R. CIV. P. 267.  The purpose of the rule is to minimize witnesses' tailoring their testimony in response to that of other witnesses and to prevent collusion among witnesses testifying for the same side.  *See Drilex Sys., Inc. v. Flores*, 1 S.W.3d 112, 116 (Tex. 1999); *In re C.J.B.*, 137 S.W.3d 814, 824-25 (Tex. App.—Waco 2004, no pet.).  The witnesses under the Rule generally may not discuss the case with anyone other than the attorneys in the case.  *Drilex Sys., Inc.*, 1 S.W.3d at 117.  When the rule is violated, the trial court may allow the testimony of the potential witness, exclude the testimony, or hold the violator in contempt.  *Id.*; *see In re D.T.C.*, 30 S.W.3d 43, 49 (Tex. App.—

Houston [14th Dist.] 2000, no pet.). We review the trial court's action for an abuse of discretion. *Drilex Sys., Inc.*, 1 S.W.3d at 117-18.

Nevertheless, certain classes of prospective witnesses are exempt from exclusion from the courtroom, including: (1) a party who is a natural person or his or her spouse; (2) an officer or employee of a party that is not a natural person and who is designated as its representative by its attorney; or (3) a person whose presence is shown by a party to be essential to the presentation of the cause. TEX. R. CIV. P. 267(b); *see* TEX. R. EVID. 614. In addition, the burden rests with the party seeking to exempt a witness from the Rule's exclusion requirement to establish that the witness's presence is essential. *Drilex Sys., Inc.*, 1 S.W.3d at 117.

Here, Browne complains that Tatum, a CASA supervisor who served as the organization's representative at the trial, should have been excluded from the courtroom because she was not officially designated as a representative by any party to the case. In particular, Browne points out that Stephanie Lane was designated as CPS's representative, but CASA failed to identify its representative when the Rule was invoked. And as a result of the alleged error, Browne was harmed "because Tatum was allowed to provide testimony directly contrary to Browne's on some critical issues."

Prior to Tatum's testimony at trial, Browne's trial counsel objected to Tatum testifying, arguing that she should have been excluded from the courtroom pursuant to Texas Rule of Evidence 614. *See* TEX. R. EVID. 614. In overruling the objection, the trial court noted that CASA was the court-appointed guardian ad litem and that Tatum is

CASA's representative. Browne's trial counsel was unable to provide the trial court with case law refuting the trial court's determination.

In a termination suit filed by a governmental entity, the trial court may appoint a charitable organization composed of volunteer advocates to appear at court hearings as a guardian ad litem for the child. *See* TEX. FAM. CODE ANN. § 107.031(a) (West 2008); *see also In re J.S.*, No. 09-10-00304-CV, 2010 Tex. App. LEXIS 8458, at **2-3 (Tex. App.— Beaumont Oct. 21, 2010, no pet.) (mem. op.). Furthermore, a guardian ad litem is entitled to appear at all hearings. *See* TEX. FAM. CODE ANN. § 107.002(c)(4) (West 2008); *see also In re J.S.*, 2010 Tex. App. LEXIS 8458, at *3. Because a guardian ad litem is entitled to appear at all hearings, we do not believe that the Rule operates to exclude the guardian ad litem from the courtroom. *See* TEX. FAM. CODE ANN. § 107.002(c)(4); *In re K.C.P.*, 142 S.W.3d 574, 585 (Tex. App.—Texarkana 2004, no pet.) (using the Code Construction Act to conclude that the specific provision of the Texas Family Code allowing the guardian ad litem to attend all legal proceedings in a case prevails over the more general language of the Texas Rules of Evidence excluding witnesses from the courtroom when the Rule is invoked); *see also In re J.S.*, 2010 Tex. App. LEXIS 8458, at *3. Thus, we believe that Tatum was not subject to the Rule because she was serving as the guardian ad litem in this case. *See* TEX. FAM. CODE ANN. §§ 107.002, 107.031(a); *In re K.C.P.*, 142 S.W.3d at 585; *see also In re J.S.*, 2010 Tex. App. LEXIS 8458, at **2-3.

And even if that is not the case, the trial court is vested with discretion to, among other things, allow the testimony of a witness, even if the Rule has been violated. *See Drilex Sys., Inc.*, 1 S.W.3d at 117; *see also In re D.T.C.*, 30 S.W.3d at 49. Therefore, based

on the foregoing, we cannot say that Browne has demonstrated that the trial court abused its discretion in overruling her objection to Tatum's testimony. *See Drilex Sys., Inc.*, 1 S.W.3d at 117-18. Accordingly, we overrule Browne's fourth issue.

**B.     The Predicate Violations**

With regard to the predicate violations, the trial court adopted the jury's findings that there was clear and convincing evidence that Browne: (1) "knowingly placed or knowingly allowed the child to remain in conditions or surroundings which endanger the physical or emotional well-being of the child"; (2) "engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangers the physical or emotional well-being of the child"; and (3) "failed to comply with the provisions of a court order that specifically established the actions necessary for the mother to obtain the return of the child . . . ." TEX. FAM. CODE ANN. § 161.001(1)(D)-(E), (O). For the reasons mentioned below, we conclude that the record contains sufficient evidence to support the jury's finding that Browne "engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangers the physical or emotional well-being of the child." *See id.* § 161.001(1)(E).

The predicate condition of section 161.001(1)(E) is satisfied if the parent has "engaged in conduct . . . which endangers the physical or emotional well-being of the child." *Id.* In this context, "endanger" means to expose to loss or injury or to jeopardize. *Boyd*, 727 S.W.2d at 533. The term means "more than a threat of metaphysical injury or the possible ill effects of a less-than-ideal family environment," but "it is not necessary that the conduct be directed at the child or that the child actually

suffers injury." *Id.* The Department bears the burden of introducing evidence concerning the offense and establishing that the offense was part of a voluntary course of conduct that endangered the child's well-being. *In re E.N.C.*, 384 S.W.3d 796, 805 (Tex. 2012); *see Walker v. Tex. Dep't of Family & Protective Servs.*, 312 S.W.3d 608, 616-17 (Tex. App.—Houston [1st Dist.] 2009, pet. denied). To determine whether termination is justified, courts may look to parental conduct both before and after the child's birth. *In re J.O.A.*, 283 S.W.3d 336, 345 (Tex. 2009) ("It necessarily follows that the endangering conduct may include the parent's actions before the child's birth, while the parent had custody of older children . . . ."). The conduct need not occur in the child's presence, and it may occur "both before and after the child has been removed." *Walker*, 312 S.W.3d at 617.

Here, the record reflects several actions taken by Browne that endanger the physical or emotional well-being of H.D.B.-M. First, Mansel testified that he is HIV-positive and that he has Hepatitis C. He also stated that he told Browne about these conditions when they first started dating. Despite the harm that could have resulted to the child, Browne chose to have sexual intercourse with Mansel. And further, the record indicates that there were complications with the child's birth, which necessitated a stay in the neonatal intensive care unit.[3] Clearly, this evidence suggests that Browne deliberately exposed herself and the child to the possible complications associated with Mansel's serious medical conditions. *See In re S.M.L.*, 171 S.W.3d 472, 477 (Tex. App.—

---

[3] Witnesses testified that the child had problems breathing at the time of birth. Mansel testified that he was told the child's medical condition was not caused by HIV or Hepatitis C.

Houston [14th Dist.] 2005, no pet.) ("It is not necessary that the parent's conduct be directed at the child or that the child actually be injured; rather, a child is endangered when the environment or the parent's course of conduct creates a potential for danger which the parent is aware of but disregards.").

Additionally, the evidence demonstrates that Browne was informed of Mansel's two prior criminal convictions for aggravated sexual assault of children, yet she insisted on living with Mansel, maintaining a romantic relationship with Mansel, and relying on Mansel's family for support when the child was first born.[4] *See In re E.N.C.*, 384 S.W.3d at 805 ("We agree that an offense occurring before a person's children are born can be a relevant factor in establishing an endangering course of conduct."); *see also In re J.T.G.*, 121 S.W.3d 117, 125 (Tex. App.—Fort Worth 2003, no pet.) ("Conduct of a parent in the home can create an environment that endangers the physical and emotional well-being of a child."). And despite lying to the Department about Mansel's identity when H.D.B.-M. was born, Browne now believes that it is not in the child's best interest to be left alone with Mansel.[5] Further, the record contains testimony that Mansel is regarded as a moderate risk for re-offending, and psychologist Dr. James Shinder stated that

---

[4] With regard to her financial situation, Browne testified that she receives SSI benefits and that she could work but chooses not to do so. *See In re M.N.G.*, 147 S.W.3d 521, 539-39 (Tex. App.—Fort Worth 2004, pet. denied) (op. on reh'g) (noting that a parent's prolonged history of unemployment and financial instability, among other things, indicates an inability to provide for the child, which is a relevant consideration in the trial court's finding of endangerment); *see also In re R.M.*, No. 07-12-00412-CV, 2012 Tex. App. LEXIS 10239, at *13 (Tex. App.—Amarillo Dec. 11, 2012, no pet.) (mem. op.).

[5] However, Browne admitted that Mansel brought her to the hearings in this case and that she loves him.

placing the child with Browne and Mansel is unquestionably dangerous.[6] *See In re Tidwell*, 35 S.W.3d 115, 119-20 (Tex. App.—Texarkana 2000, no pet.) ("It is not necessary for [the mother] to have had certain knowledge that one of the [sexual molestation] offenses actually occurred; it is sufficient that she was aware of the potential for danger to the children and disregarded that risk by breaking her agreement with the court and placing and leaving the children in that environment."). Dr. Shinder also opined that, after speaking with and testing both, neither Browne nor Mansel is capable of protecting H.D.B.-M. In fact, witnesses testified that Browne chose not to move from the apartment complex where she lived even though a murder had recently taken place at the complex. In addition, Mansel testified that he does not believe that the child should be placed with Browne because she is a "psycho."

In addition, the circumstances surrounding Browne's relinquishment of her parental rights to another child, T.B., are significant to show a voluntary, deliberate, and conscious course of endangering conduct by Browne. Browne acknowledged that she voluntarily relinquished her parental rights to T.B. a couple of months prior to H.D.B.-M.'s birth.[7] She testified that T.B. was repeatedly sexually assaulted by Browne's brother who was living with Browne and T.B. at the time. *See In re J.T.G.*, 121 S.W.3d at 125 ("For example, abusive or violent conduct by a parent or other resident of a child's

---

[6] Regarding Mansel's risk-level status, the Department proffered evidence explaining that a moderate risk level "indicates that the person poses a moderate danger to the community and may continue to engage in criminal sexual conduct."

[7] She also noted that her first-born child was adopted and lives in Michigan. T.B. and H.D.B.-M. are Browne's second and third-born children, respectively.

home may produce an environment that endangers the physical or emotional well-being of a child."). At first, Browne did not believe T.B.'s outcry that Browne's brother had repeatedly sexually assaulted him. *See In re J.O.A.*, 283 S.W.3d at 345. Dr. Shinder recounted that Browne did not believe T.B.'s outcry until her brother actually admitted to the abuse. And once she found out about the abuse of T.B., Browne threatened to have T.B. castrated when he became a teenager so that he could not have sex with others. Browne later clarified that she intended that T.B. get a vasectomy when he reached the age of fifteen. In any event, Browne also admitted that her brother did cocaine at the house and ate all of T.B.'s food, which forced her to write a letter to T.B.'s school notifying school administration that T.B. did not have any food to eat.

Viewing the evidence in the light most favorable to the judgment, we conclude that a reasonable factfinder could form a firm belief or conviction that Browne "engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangers the physical or emotional well-being of the child." *See* TEX. FAM. CODE ANN. § 161.001(1)(E); *see also In re J.P.B.*, 180 S.W.3d at 573. As such, we hold that the evidence is legally sufficient to support the determination that Browne engaged in conduct proscribed by subsection (E) of section 161.001(1). *See* TEX. FAM. CODE ANN. § 161.001(1)(E); *see also In re J.P.B.*, 180 S.W.3d at 573. Moreover, in light of the entire record, we conclude that the evidence supporting termination with respect to subsection (E) is also factually sufficient. *See* TEX. FAM. CODE ANN. § 161.001(1)(E); *see also In re H.R.M.*, 209 S.W.3d at 108. We therefore overrule Browne's third issue.

And because a finding of only one ground alleged under section 161.001(1) is necessary to support a judgment of termination, we need not address Browne's other issues. *See* TEX. R. APP. P. 47.1; *see also In re J.L.*, 163 S.W.3d at 84; *In re A.V.*, 113 S.W.3d at 362 ("Only one predicate finding under section 161.001(1) is necessary to support a judgment of termination when there is also a finding that termination is in the child's best interest.").[8] Accordingly, Browne's first and second issues are overruled.

## IV.    MANSEL'S APPELLATE COMPLAINTS

Mansel raises five issues on appeal. In his first issue, Mansel argues that the trial court erred in submitting a jury question regarding section 161.001(1)(L) of the Texas Family Code because there is no evidence of any serious injury to the child that was the subject of the conviction. Mansel's remaining issues challenge the sufficiency of the evidence supporting termination based on findings of several predicate violations. The Department counters that the trial court did not err in submitting a question as to section 161.001(1)(L) because the evidence demonstrates that Mansel caused serious injury to the child he sexually assaulted. The Department also argues that Mansel failed to preserve error as to his remaining sufficiency issues.

At the outset, we note that Mansel does not assert that the evidence is factually insufficient to support the termination findings, nor does he challenge the jury's best-interest finding. This is likely due to the fact that this Court recently held that in parental-rights-termination cases, "to raise a factual-sufficiency complaint on appeal, it

---

[8] Browne does not challenge the sufficiency of the evidence supporting the finding that termination of her parental rights is in the child's best interest.

must be preserved by including it in a motion for new trial." *In re A.M.*, 385 S.W.3d 74, 2012 Tex. App. LEXIS 6705, at *6 (Tex. App.—Waco Aug. 9, 2012, pet. denied); *see* TEX. R. CIV. P. 324(b)(2). Here, Mansel did not file a motion for new trial. In addition, voir dire in this case began on August 28, 2012—nineteen days after we issued our opinion in *In re A.M.*; thus, the *In re A.M.* requirements were binding on the parties in this case. *See In re A.M.*, 2012 Tex. App. LEXIS 6705, at **8-9 (stating that the requirement to preserve a factual-sufficiency complaint in a termination case by filing a motion for new trial is prospective, rather than retroactive, in nature).

In any event, Mansel does argue that the evidence supporting the findings of several predicate violations is legally insufficient. With regard to preservation, this Court has held that a legal-sufficiency challenge in a parental-rights-termination case can be preserved by: (1) a motion for new trial; (2) a motion for an instructed verdict; (3) an objection to the submission of a question in the jury charge; (4) a motion for a judgment notwithstanding the verdict; or (5) a motion to disregard the jury's answer to a question in the verdict. *See In re A.P.*, 42 S.W.3d 248, 254 n.1 (Tex. App.—Waco 2001, no pet.), *overruled on other grounds by In re A.M.*, 2012 Tex. App. LEXIS 6705, at *6 (citing *Cecil v. Smith*, 804 S.W.2d 509, 510-11 (Tex. 1991)); *see also In re S.J.T.B.*, No. 09-12-00098-CV, 2012 Tex. App. LEXIS 9445, at *17 (Tex. App.—Beaumont Nov. 15, 2012, no pet.) (mem. op.).

As mentioned above, Mansel did not file a motion for new trial. Furthermore, a review of the record shows that Mansel did not move for an instructed verdict, for a judgment notwithstanding the verdict, or to disregard the jury's answer to a question in

the verdict. Instead, Mansel objected to Question 3(D) in the portion of the jury charge pertaining to Mansel, which asked the following:

> Has been convicted or has been placed on community supervision, including deferred adjudication community supervision, for being criminally responsible for the death or serious injury of a child or adjudicated for conduct that caused the death or serious injury of a child and that would constitute a violation of the Texas Penal Code Section 22.021 for Aggravated Sexual Assault.

*See* TEX. FAM. CODE ANN. § 161.001(1)(L). He did not object to any other questions in the charge.

Because Mansel does not challenge the factual sufficiency of the evidence supporting the termination findings, and because Mansel did not file any of the aforementioned motions or objections to the remaining three termination grounds, sections 161.001(1)(D), (E), and (O), we conclude that Mansel has not preserved his appellate complaints as to the termination grounds corresponding to sections 161.001(1)(D), (E), and (O). *See Cecil*, 804 S.W.2d at 510-11; *In re A.P.*, 42 S.W.3d at 254 n.1; *see also In re S.J.T.B.*, 2012 Tex. App. LEXIS 9445, at *17. Mansel's failure to preserve his appellate complaints as to sections 161.001(1)(D), (E), and (O) renders these termination grounds unchallenged on appeal. Moreover, because only one predicate finding under section 161.001(1) is necessary to support a judgment of termination when there is also a finding that termination is in the child's best interest, *see In re A.V.*, 113 S.W.3d at 362, any of these unchallenged findings was sufficient to support termination as long as termination was shown to be in the child's best interest—an issue that also was unchallenged, though we believe, after reviewing the record in the

appropriate light, that termination in this case is in the best interest of H.D.B.-M.  *See* TEX. FAM. CODE ANN. § 161.001(1); *In re B.K.D.*, 131 S.W.3d 10, 16 (Tex. App.—Fort Worth 2003, pet. denied) (citing *In re B.B.*, 971 S.W.2d 160, 163 (Tex. App.—Beaumont 1998, pet. denied), *disapproved on other grounds by In re C.H.*, 89 S.W.3d at 17; *Ziegler v. Tarrant County Child Welfare Unit*, 680 S.W.2d 674, 678 (Tex. App.—Fort Worth 1984, writ ref'd n.r.e.)); *see also In re M.J.*, No. 11-12-00065-CV, 2012 Tex. App. LEXIS 7871, at *6 (Tex. App.—Eastland Sept. 13, 2012, no pet.) (mem. op.).

Therefore, based on the foregoing, we affirm the trial court's judgment of termination as to Mansel.  As such, all of his appellate issues are overruled.

## V.    CONCLUSION

Having overruled all of Browne's and Mansel's issues on appeal, we affirm the judgment of the trial court terminating the parental rights of Browne and Mansel.


AL SCOGGINS
Justice


Before Chief Justice Gray,
        Justice Davis, and
        Justice Scoggins
Affirmed
Opinion delivered and filed February 28, 2013
[CV06]