Opinion filed August 22, 2019



In The

# Eleventh Court of Appeals

_____

## No. 11-19-00001-CV
_____

## IN THE INTEREST OF E.B. AND M.B., CHILDREN

**On Appeal from the 326th District Court**
**Taylor County, Texas**
**Trial Court Cause No. 8773-CX**

## M E M O R A N D U M   O P I N I O N

The trial court entered an order in which it terminated the parental rights of the parents of E.B. and M.B.  The mother filed an appeal.  On appeal, she presents one issue in which she challenges the sufficiency of the evidence to support the trial court's best interest finding and one issue in which she complains that drug-test results were improperly admitted into evidence.  We affirm.

*Termination Findings and Standards*

Appellant argues that the evidence is legally and factually insufficient to support the trial court's finding that termination of her parental rights was in the best interest of her children.  Termination of parental rights must be supported by clear

and convincing evidence. TEX. FAM. CODE ANN. § 161.001(b) (West Supp. 2018). To determine on appeal if the evidence is legally sufficient in a parental termination case, we review all of the evidence in the light most favorable to the finding and determine whether a rational trier of fact could have formed a firm belief or conviction that its finding was true. *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005). To determine if the evidence is factually sufficient, we give due deference to the finding and determine whether, on the entire record, a factfinder could reasonably form a firm belief or conviction about the truth of the allegations against the parent. *In re C.H.*, 89 S.W.3d 17, 25–26 (Tex. 2002).

To terminate parental rights, it must be shown by clear and convincing evidence that the parent has committed one of the acts listed in Section 161.001(b)(1)(A)–(U) and that termination is in the best interest of the child. FAM. § 161.001(b). In this case, the trial court found that Appellant had committed three of the acts listed in Section 161.001(b)(1)—those found in subsections (D), (E), and (O). Specifically, the trial court found that Appellant had knowingly placed or knowingly allowed the children to remain in conditions or surroundings that endangered the children's physical or emotional well-being; that Appellant had engaged in conduct or knowingly placed the children with persons who engaged in conduct that endangered the children's physical or emotional well-being; and that Appellant had failed to comply with the provisions of a court order that specifically established the actions necessary for her to obtain the return of the children, who had been in the managing conservatorship of the Department of Family and Protective Services for not less than nine months as a result of the children's removal from the parents for abuse or neglect. Appellant does not challenge these findings, but she does challenge the trial court's finding that termination is in the children's best interest. *See id.* § 161.001(b)(2). Accordingly, we will uphold the order of termination if the evidence is sufficient to support the best interest finding.

With respect to the best interest of a child, no unique set of factors need be proved. *In re C.J.O.*, 325 S.W.3d 261, 266 (Tex. App.—Eastland 2010, pet. denied). But courts may use the non-exhaustive *Holley* factors to shape their analysis. *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976). These include, but are not limited to, (1) the desires of the child, (2) the emotional and physical needs of the child now and in the future, (3) the emotional and physical danger to the child now and in the future, (4) the parental abilities of the individuals seeking custody, (5) the programs available to assist these individuals to promote the best interest of the child, (6) the plans for the child by these individuals or by the agency seeking custody, (7) the stability of the home or proposed placement, (8) the acts or omissions of the parent that may indicate that the existing parent-child relationship is not a proper one, and (9) any excuse for the acts or omissions of the parent. *Id.* Additionally, evidence that proves one or more statutory grounds for termination may also constitute evidence illustrating that termination is in the child's best interest. *C.J.O.*, 325 S.W.3d at 266.

*Background Facts*

The Department originally became involved with the children in this case after an intake that involved bruises and bug bites on the mother's youngest child, J.W., and allegations of drug use by the mother. At that time, J.W. tested positive for methamphetamine. Appellant had no explanation for J.W.'s test result and agreed to submit to drug testing herself and to take her other two children, nine-year-old E.B. and five-year-old M.B, for drug testing. Appellant failed to do so, and the trial court eventually ordered drug testing for E.B. and M.B. E.B. was positive for amphetamines and methamphetamine, and M.B. was positive for methamphetamine.

E.B. and M.B. lived with Appellant, but Appellant denied that she had ever done drugs around the children. Appellant suggested that the children may have been exposed to drugs when she took the children with her to a friend's house. As

3

a result of the children's positive drug tests, the children were removed from Appellant's care, and a court-ordered family service plan was instituted. We note that J.W. was no longer part of this suit at the time of the final hearing regarding E.B. and M.B.

As part of the service plan, Appellant was required to submit to random drug testing. According to the conservatorship caseworker, the Department had requested that Appellant submit to a drug test ten to fifteen times, but Appellant did so only four times. And when Appellant did submit to testing, she tested positive for methamphetamine or for methamphetamine and amphetamines.

Appellant testified that she had quit using drugs, but she acknowledged, however, that she did not do so until about one year after her children were removed from her care. Appellant disputed the caseworker's suggestion that Appellant had refused to drug test when requested; Appellant denied that she had ever refused to submit to a random drug screen. She testified that she had recently been submitting to random drug tests at Serenity House as part of an outpatient treatment program. Appellant's counselor at Serenity House told the conservatorship caseworker that Appellant had submitted to a urinalysis during the month before trial and that the results of that test were negative. The Department requested that Appellant submit to a hair follicle test, but according to the caseworker, Appellant did not comply with that request.

The record reflects that Appellant completed some of the tasks in her service plan and had recently obtained a suitable home. The mother, however, had not communicated with the Department in several months and had not maintained suitable employment. Additionally, the mother had not visited the children in more than four months; the trial court had ordered her visitations to cease because she refused to submit to drug testing.

At the time of trial, E.B. was ten years old, and M.B. was seven years old. Both were doing well in their respective placements and were developmentally on track, though both had some behavioral issues when they came into the Department's care. M.B. had been placed in a foster home, where she was happy and was doing very well. M.B.'s foster parents would like to adopt her. At the time of trial, E.B. was still placed at New Horizons, the Audrey Grace House. E.B.'s behavioral issues had improved, and he was ready to be moved to a less restrictive placement. The Department's plan for E.B. was to look for an adoptive family for E.B. if his parents' parental rights were terminated. According to the caseworker, E.B. and Appellant were bonded, but E.B. was aware of the concerns regarding his mother's drug use. If Appellant were "clean," E.B. would want to return to Appellant's care; otherwise, E.B. wants to be adopted and have a "forever family." M.B.'s foster family had facilitated visits between E.B. and M.B. and indicated that they would continue to do so. The conservatorship caseworker testified that the termination of Appellant's parental rights would be in the best interest of E.B. and M.B. The children's CASA volunteer recommended that Appellant's parental rights be terminated. Appellant did not believe that it would be in E.B.'s or M.B.'s best interest to terminate Appellant's parental rights.

*Analysis*

Based upon the *Holley* factors and the evidence in the record, we cannot hold that the trial court's best interest finding is not supported by clear and convincing evidence. *See Holley*, 544 S.W.2d at 371–72. Considering the desires of the children, the emotional and physical needs of the children, the danger to the children, the parental abilities of those involved, the Department's plans for the children, the stability of the placements, Appellant's drug use, and Appellant's refusal to submit to drug tests while this case was pending, the trial court could reasonably have formed a firm belief or conviction that it would be in each child's best interest for

5

Appellant's parental rights to be terminated. We hold that the evidence is both legally and factually sufficient to support the trial court's best interest finding. We overrule Appellant's first issue.

In her second issue, Appellant contends that the trial court abused its discretion when it admitted the results of E.B.'s, M.B.'s, and Appellant's drug tests into evidence at trial. The results of these drug tests were admitted into evidence as exhibits under the business records exception to the hearsay rule. *See* TEX. R. EVID. 803(6), 902(10). Appellant objected to the admission of these exhibits as hearsay and to the lack of testimony from the chemist that performed the tests. Appellant pointed to criminal law[1] and indicated that, in family law cases too, "there has to be a technician here to testify as to the authenticity to the drug results, themselves; how that was derived at, the process that they used, that type of thing on the way of an expert." The trial court overruled Appellant's objections to the exhibits and admitted them into evidence.

Appellant likewise asserts on appeal that the admission of "the drug test results without anyone to testify to these matters [the qualification of the tester, the equipment used, and the testing procedures] is an abuse of discretion." For this proposition, she relies upon *In re K.C.P.*, 142 S.W.3d 574, 579–80 (Tex. App.—Texarkana 2004, no pet.). We do not read *K.C.P.* to require live testimony regarding these matters.

Attached to each of the complained-of exhibits in this case was an affidavit by the custodian of records of Texas Alcohol and Drug Testing Service. The affidavits pertained to hair, urine, and oral fluid testing. The affidavits indicate that

---

[1]We note that the Confrontation Clause of the Sixth Amendment has been interpreted to give the accused in a criminal prosecution the right to confront the analyst that prepared a forensic lab report and to exclude such a report without the testimony of that analyst. *Bullcoming v. New Mexico*, 564 U.S. 647, 651–52 (2011); *Burch v. State*, 401 S.W.3d 634, 636–38 (Tex. Crim. App. 2013). The Sixth Amendment specifically applies only to "criminal prosecutions." U.S. CONST. amend. VI.

"strict chain of custody procedures" were utilized and that the testing was performed by a certified scientist utilizing GC/MS (gas chromatography/mass spectrometry) instruments and reviewed by a licensed medical review officer. The affidavits generally track the language of Rule 803(6), which sets out the requirements for the hearsay exception for records of regularly conducted business activity, and Rule 902(10), which sets out the requirements for authentication purposes of an affidavit that accompanies business records. *See* TEX. R. EVID. 803(6), 902(10). The affidavits attached to the complained-of exhibits in this case provide information regarding the chain of custody, the testing procedures, and the qualifications of the analysts. We find no evidence to indicate a lack of trustworthiness with respect to the exhibits. *See* TEX. R. EVID. 803(6)(E). We do not believe that the trial court abused its discretion in admitting the exhibits over Appellant's objection.

Moreover, even if Appellant is correct in her contention that the trial court abused its discretion in admitting the exhibits, we hold—as did the courts of appeals in *A.D.H.–G* and *K.C.P.*—that any error in the admission of the drug-test results was harmless. *See In re A.D.H.–G.*, No. 12-16-00001-CV, 2016 WL 3182610, at \*6 (Tex. App.—Tyler June 8, 2016, no pet.) (mem. op.); *K.C.P.*, 142 S.W.3d at 580–81; *see also* TEX. R. APP. P. 44.1(a)(1) (judgment may not be reversed unless the error probably caused the rendition of an improper judgment). Other evidence at trial indicated that Appellant was seen in possession of "meth paraphernalia-type baggies," that Appellant no-showed numerous times for drug testing while this case was pending, and that Appellant had had "positive drug test results." Appellant admitted at trial that she had used drugs as recently as June 26, 2018, a little over four months before the trial. Furthermore, evidence that Appellant's youngest child, J.W., tested positive for methamphetamine was admitted without objection at trial. We note that, to support a finding that Appellant endangered E.B. and M.B., Appellant's offending conduct did not have to be directed at them, nor did they

actually have to suffer an injury.  *See In re J.O.A.*, 283 S.W.3d 336, 345 (Tex. 2009).
Thus, we conclude that any error in the admission of the exhibits containing E.B.'s,
M.B.'s, and Appellant's drug-test results was harmless.  We overrule Appellant's
second issue.

*This Court's Ruling*

We affirm the trial court's order of termination.


JOHN M. BAILEY

CHIEF JUSTICE


August 22, 2019

Panel consists of: Bailey, C.J.,
Stretcher, J., and Wright, S.C.J.[2]

Willson, J., not participating.

---

[2]Jim R. Wright, Senior Chief Justice (Retired), Court of Appeals, 11th District of Texas at Eastland, sitting by assignment.