

**In The**
**Court of Appeals**
**Sixth Appellate District of Texas at Texarkana**

_____

No. 06-21-00019-CV

_____

IN THE INTEREST OF D.R. AND C.R., CHILDREN

On Appeal from the 102nd District Court
Bowie County, Texas
Trial Court No. 20C0411-102

Before Morriss, C.J., Burgess and Stevens, JJ.
Opinion by Justice Stevens

# O P I N I O N

In a suit brought by the Texas Department of Family and Protective Services (the Department), the trial court terminated Mother's parental rights to her children on three grounds specified in Section 161.001, subsections (b)(1)(D), (O), and (P), of the Texas Family Code. *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(D), (O), (P).[1]  On appeal, Mother argues that the evidence is legally and factually insufficient to support the trial court's findings on the statutory grounds and its finding that termination of her parental rights was in the children's best interests. Mother also argues that the trial court erred by failing to hold statutory hearings before the final hearing, by failing to grant the motion for a 180-day extension based on extenuating circumstances, and by admitting drug test results over Mother's objection.

We find that the evidence is sufficient to support the trial court's Ground D finding and its conclusion that terminating Mother's parental rights was in the children's best interests.  We also find that Mother's complaint about statutory hearings is moot, the trial court did not abuse its discretion in overruling the motion for a 180-day extension, and any error in admitting drug test results was rendered harmless by substantially similar testimony admitted without objection. As a result, we affirm the trial court's judgment.

## I.       Legally and Factually Sufficient Evidence Supports the Trial Court's Findings

### A.       Standard of Review

"The natural right existing between parents and their children is of constitutional dimensions." *In re E.J.Z.*, 547 S.W.3d 339, 343 (Tex. App.—Texarkana 2018, no pet.) (quoting

---

[1]To protect the confidentiality of the children, we refer to the appellant as Mother and to the children by initials. *See* TEX. R. APP. P. 9.8(b)(2).

*Holick v. Smith*, 685 S.W.2d 18, 20 (Tex. 1985)). "Indeed, parents have a fundamental right to make decisions concerning 'the care, custody, and control of their children.'" *Id.* (quoting *Troxel v. Granville*, 530 U.S. 57, 65 (2000)). "Because the termination of parental rights implicates fundamental interests, a higher standard of proof—clear and convincing evidence—is required at trial." *Id.* (quoting *In re A.B.*, 437 S.W.3d 498, 502 (Tex. 2014)). "'Clear and convincing evidence' is that 'degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established.'" *Id.* (quoting TEX. FAM. CODE ANN. § 101.007) (citing *In re J.O.A.*, 283 S.W.3d 336, 344 (Tex. 2009)). Based on this standard, we are required to "engage in an exacting review of the entire record to determine if the evidence is . . . sufficient to support the termination of parental rights." *Id.* (quoting *In re A.B.*, 437 S.W.3d at 500).

"In our legal sufficiency review, we consider all the evidence in the light most favorable to the findings to determine whether the fact-finder reasonably could have formed a firm belief or conviction that the grounds for termination were proven." *In re L.E.S.*, 471 S.W.3d 915, 920 (Tex. App.—Texarkana 2015, no pet.) (citing *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005) (per curiam); *In re J.L.B.*, 349 S.W.3d 836, 846 (Tex. App.—Texarkana 2011, no pet.)). "We assume the trial court, acting as fact-finder, resolved disputed facts in favor of the finding, if a reasonable fact-finder could do so, and disregarded evidence that the fact-finder could have reasonably disbelieved or the credibility of which reasonably could be doubted." *Id.* (citing *In re J.P.B.*, 180 S.W.3d at 573).

3

"In our review of factual sufficiency, we give due consideration to evidence the trial court could have reasonably found to be clear and convincing." *Id.* (citing *In re H.R.M.*, 209 S.W.3d 105, 109 (Tex. 2006) (per curiam)). "We consider only that evidence the fact-finder reasonably could have found to be clear and convincing and determine 'whether the evidence is such that a fact[-]finder could reasonably form a firm belief or conviction about the truth of the . . . allegations.'" *Id.* (quoting *In re H.R.M.*, 209 S.W.3d at 109 (quoting *In re C.H.*, 89 S.W.3d 17, 25 (Tex. 2002)) (citing *In re J.F.C.*, 96 S.W.3d 256, 264, 266 (Tex. 2002))). "If, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient." *Id.* (quoting *In re J.F.C.*, 96 S.W.3d at 266).

"Despite the profound constitutional interests at stake in a proceeding to terminate parental rights, 'the rights of natural parents are not absolute; protection of the child is paramount.'" *Id.* (quoting *In re A.V.*, 113 S.W.3d 355, 361 (Tex. 2003) (quoting *In re J.W.T.*, 872 S.W.2d 189, 195 (Tex. 1994)) (citing *In re M.S.*, 115 S.W.3d 534, 547 (Tex. 2003))). "A child's emotional and physical interests must not be sacrificed merely to preserve parental rights." *Id.* (quoting *In re C.A.J.*, 459 S.W.3d 175, 179 (Tex. App.—Texarkana 2015, no pet.) (citing *In re C.H.*, 89 S.W.3d at 26)).

### B.    The Evidence at Trial

At trial, Cherrell Stuart, a conservatorship worker with the Department, testified that she became involved in the case in March 2020, after Mother admitted to using methamphetamine

4

and to having an unstable and unsafe environment for the children. According to Stuart, the children were living in surroundings with exposed wires and boards, and their room had graffiti on the walls and no beds. Stuart testified that she had visited the home after Mother had covered the exposed wires but noticed that there were still safety concerns for the children in the home.

Stuart testified that, although Mother completed some of her family-based services, she did not submit to several random drug testing requests. Stuart said that, even after Mother was released from inpatient drug treatment in May 2020, she failed to submit to six drug tests between June 2020 and February 2021 and tested positive for methamphetamine on August 11, October 8, and November 30, 2020, and January 13, 2021. Stuart testified that Mother admitted that she was using drugs when her drug test results were positive. Over Mother's objection, the trial court admitted drug test results attached to a business records affidavit, which showed that Mother tested positive for methamphetamine on February 18 and 28, April 15, August 11, October 8, and November 30, 2020.

Stuart also said that Mother was dating a man that was in a treatment facility until December 2020. Stuart told Mother that any person she was dating would also have to work family-based services, but the boyfriend never did, and Stuart believed they were still dating because Mother said that, "once he got out of jail they were trying to get a house together." Stuart testified that Mother was living with the boyfriend's father or grandfather.

Stuart testified that the children had behavioral issues that were improving with therapy. She believed that it was in their best interests to remain in their foster placement, which was a stable environment. During cross-examination, Stuart admitted that nothing prevented the foster

parents from entering a discharge notice, that D.R. was very attached to Mother and was missing her, and that traumatized children can exhibit negative behavior. Stuart also testified that Mother had communicated with the children regularly during her weekly visitation.

Patricia Smith, the Court Appointed Special Advocate, testified that she regularly saw the children and visited with Mother. Smith said Mother's progress was "very slow" and that, even though Mother had completed some services, she was not "very consistent in those services." According to Smith, the children did not really ask about Mother and were doing well in their short-term placement.

Smith testified that D.R. was seven years old and had attention deficit and hyperactivity disorder (ADHD) and other behavioral issues but was showing improvement with therapy and medication. Smith also said that C.R., who was five years old, had a speech delay that was improving with therapy. During cross-examination, Smith agreed that the children were not in an adoptive home and did not have permanency, but still felt that it was in the best interests of the children to find permanency after Mother's parental rights were terminated.

### C.    Sufficient Evidence Supports the Ground D Predicate Finding

"Only one predicate finding under Section 161.001[b](1) is necessary to support a judgment of termination when there is also a finding that termination is in the child's best interest."[2] *In re O.R.F.*, 417 S.W.3d 24, 37 (Tex. App.—Texarkana 2013, pet. denied) (quoting *In re A.V.*, 113 S.W.3d at 362) (citing *In re K.W.*, 335 S.W.3d 767, 769 (Tex. App.—Texarkana 2011, no pet.)). Yet, because the trial court's finding under Ground D "may have implications

---

[2]Mother also challenges the trial court's Ground P and Ground O findings. Because we find that sufficient evidence supported the Ground D finding, we need not address these points.

6

for . . . parental rights to other children," due process demands that we review the trial court's findings under this ground. *In re N.G.*, 577 S.W.3d 230, 234 (Tex. 2019) (per curiam).

Termination under Ground D is proper when there is clear and convincing evidence that a parent has "knowingly placed or knowingly allowed the child[ren] to remain in conditions or surroundings which endanger the physical or emotional well-being of the child[ren]." TEX. FAM. CODE ANN. § 161.001(b)(1)(D). Ground D focuses on the children's environment, and the Department had the burden of proving by clear and convincing evidence that that environment endangered their physical or emotional well-being. *See In re L.C.*, 145 S.W.3d 790, 796 (Tex. App.—Texarkana 2004, no pet.). "In evaluating termination under [G]round (D), however, we are to examine the time prior to [the children's] removal to determine whether the environment of the home posed a danger to [their] physical or emotional well-being." *In re L.E.S.*, 471 S.W.3d at 926 (citing *In re L.C.*, 145 S.W.3d at 795); *see In re Y.Z.*, No. 04-20-00429-CV, 2021 WL 469014, at *3 (Tex. App.—San Antonio Feb. 10, 2021, no pet.) (mem. op.).

"A child is endangered when the environment creates a potential for danger that the parent is aware of, but disregards." *In re N.B.*, No. 06-12-00007-CV, 2013 WL 1605457, at *9 (Tex. App.—Texarkana May 8, 2012, no pet.) (mem. op.). Ground "(D) permits termination [of parental rights] based on a single act or omission [by the parent]." *In re L.C.*, 145 S.W.3d 790, 797 (Tex. App.—Texarkana 2004, no pet.); *see In re A.B.*, 125 S.W.3d 769, 777 (Tex. App.—Texarkana 2003, pet. denied). "[U]nlawful conduct by a parent . . . can create an environment that endangers the physical and emotional well-being of a child as required for termination under [Ground] (D)." *In re C.J.B.*, No. 05-19-00165-CV, 2019 WL 3940987, at *6 (Tex. App.—Dallas

7

Aug. 21, 2019, no pet.) (mem. op.). "Endanger," as used in the definition of Ground D, "means to expose to loss or injury; to jeopardize." *Tex. Dep't of Human Servs. v. Boyd*, 727 S.W.2d 531, 533 (Tex. 1987); *see In re L.E.S.*, 471 S.W.3d at 923. "Although 'endanger' means more than a threat of metaphysical injury or the possible ill effects of a less-than-ideal family environment, it is not necessary that the conduct be directed at the child or that the child actually suffers injury." *In re M.C.*, 917 S.W.2d 268, 269 (Tex. 1996) (per curiam) (quoting *Boyd*, 727 S.W.2d at 533).

"[I]llegal drug use by a parent . . . supports the conclusion that the children's surroundings endanger their physical or emotional well-being." *In re K.B.*, No. 06-20-00074-CV, 2020 WL 7702179, at \*4 (Tex. App.—Texarkana Dec. 29, 2020, no pet.) (mem. op.) (quoting *In re L.E.S.*, 471 S.W.3d at 925) (citing *In re J.T.G.*, 121 S.W.3d 117, 125 (Tex. App.—Fort Worth 2003, no pet.); *In re N.B.*, No. 06-12-00007-CV, 2012 WL 1605457, at \*9 (Tex. App.—Texarkana May 8, 2012, no pet.) (mem. op.) ("unlawful conduct by persons who live in the child's home or with whom the child is compelled to associate on a regular basis in his home is a part of the 'conditions or surroundings' of the child's home under [Ground] D"). The evidence admitted at trial established that Mother was using methamphetamine before the Department filed its petition to terminate her parental rights in March 2020.

Also, Stuart testified that the children were living in surroundings with exposed wires and boards. Although Mother covered the exposed wires during the pendency of the case, "[t]he time period relevant to a review of conduct and environment under statutory [G]round D is prior to the children's removal," and Stuart said the surroundings still posed safety concerns for the

children.  *In re R.W.*, No. 06-21-00012-CV, 2021 WL 2370618, at \*5 (Tex. App.—Texarkana June 10, 2021, no pet.) (quoting *In re Y.Z.*, 2021 WL 469014, at \*3).

According to Stuart, Mother admitted to the methamphetamine use and to having an unstable and unsafe environment for the children before their removal.  We find that legally and factually sufficient evidence, including Mother's drug use and the home's exposed wires and boards, established by clear and convincing evidence that Mother placed or knowingly allowed the children to remain in conditions or surroundings that endangered their physical well-being. As a result, we overrule Mother's first point of error.

### D.     Sufficient Evidence Supports the Best-Interests Finding

Next, Mother challenges the sufficiency of evidence supporting the trial court's best-interests finding.  In determining the best interests of a child, courts consider the following *Holley* factors:

> (1) the desires of the child, (2) the emotional and physical needs of the child now and in the future, (3) the emotional and physical danger to the child now and in the future, (4) the parental abilities of the individuals seeking custody, (5) the programs available to assist these individuals, (6) the plans for the child by these individuals, (7) the stability of the home, (8) the acts or omissions of the parent that may indicate the existing parent-child relationship is not a proper one, and (9) any excuse for the acts or omissions of the parent.

*In re N.L.D.*, 412 S.W.3d 810, 818–19 (Tex. App.—Texarkana 2013, no pet.) (citing *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976)); *see In re E.N.C.*, 384 S.W.3d 796, 807 (Tex. 2012); *see also* TEX. FAM. CODE ANN. § 263.307(b).  Further, "we may consider evidence used to support the grounds for termination of parental rights in the best-interest analysis."  *In re L.W.*, 609 S.W.3d 189, (Tex. App.—Texarkana 2020, no pet.) (citing *In re C.H.*, 89 S.W.3d at 28).

"There is no requirement that the party seeking termination prove all nine factors." *In re J.S.*, No. 06-20-00084-CV, 2021 WL 1286570, at *5 (Tex. App.—Texarkana Apr. 7, 2021, no pet.) (mem. op.) (quoting *In re N.L.D.*, 412 S.W.3d at 819).

Here, the evidence showed that D.R. was very attached to Mother and missed her and that Mother communicated with the children on a regular basis. Although there was evidence in the record that the children were doing well in their placement, there was no evidence that they were bonded to their foster family, who had no intent to adopt them. As a result, we find that the first *Holley* factor weighs against termination of Mother's parental rights.

Even so, we find that the remaining *Holley* factors weigh in favor of terminating Mother's parental rights. The record shows that D.R., who was seven, had ADHD and behavioral issues that required therapy and that C.R., who was five, also required therapy for a speech impediment. As a result, the needs of these young children were great and it was unlikely that Mother would be able to meet their needs because of her drug use, which "suggest[ed] a substantial likelihood that [she] would be a danger to the children in the future or put them in a possibly harmful situation." *In re X.R.L.*, 461 S.W.3d 633, 640–41 (Tex. App.—Texarkana 2015, no pet.); *see In re J.S.*, 2021 WL 1286570, at *5 ("Parental drug abuse is also a factor to be considered in determining a child's best interests.") (quoting *In re N.L.D.*, 412 S.W.3d 810, 819 (Tex. App.—Texarkana 2013, no pet.)). Mother's use of methamphetamine during the pendency of the case, even after being released from inpatient treatment, showed that she lacked the parental abilities necessary to care for the children, that she failed to learn from the programs available to assist her, and that the existing parent-child relationship was not a proper one.

10

Mother's boyfriend was currently in a treatment facility, and the only plan introduced by Mother involved the children moving into either the boyfriend's family's home or a new home that would be occupied by boyfriend after his release from jail. Given the boyfriend's failure to participate in family-based services, Mother's continued drug use, and her prior admissions that her home was an unstable and unsafe environment for the children, the Department showed that Mother could not provide D.R. and C.R. with a stable environment. Although the Department did not yet have a permanent plan for the children, they were in a stable foster home, and the Department sought to terminate Mother's parental rights so the children could have permanency in the future.

After weighing all the *Holley* factors, we conclude that the trial court had legally and factually sufficient evidence to find that termination of Mother's parental rights was in the children's best interests. As a result, we overrule Mother's second point of error.

## II.    Mother's Complaint About Statutory Hearings Is Moot

Mother complains that the trial court failed to hold statutory hearings after it entered temporary orders in this case. Instead, the trial court entered status hearing and permanency hearing orders by agreement due to the COVID-19 emergency, but Mother argues that her signature did not appear on those orders. We find Mother's complaints moot.

Mother's complaints relate to temporary orders. *See In re K.E.*, No. 02-20-00045-CV, 2020 WL 4360493, at *3 (Tex. App.—Fort Worth July 30, 2020, pet. denied) (mem. op.) (a "Status Hearing Order is a temporary order"). "[A] temporary order is superseded by entry of a final order of termination, rendering moot any complaint about the temporary order." *In re*

11

*J.F.G., III*, 500 S.W.3d 554, 559 (Tex. App.—Texarkana 2016, no pet.) (quoting *In re A.K.*, 487 S.W.3d 679, 683 (Tex. App.—San Antonio 2016, no pet.)); *In re C.R.J.*, No. 06-13-00053-CV, 2014 WL 199209, at *2 (Tex. App.—Texarkana Jan. 17, 2014, no pet.) (mem. op.) (complaints regarding temporary hearings or temporary orders rendered moot when final termination order was entered). Because a final order terminating Mother's parental rights was entered in this case, we overrule Mother's third point of error as moot.

### III. Overruling the Motion For a 180-day Extension Was Not an Abuse of Discretion

A trial court can grant a 180-day extension of the dismissal deadline in a suit to terminate a parent-child relationship filed by the Department on a showing that "extraordinary circumstances necessitate the child[ren] remaining in the temporary managing conservatorship of the department and that continuing the appointment of the department as temporary managing conservator is in the best interest of the child." TEX. FAM. CODE ANN. § 263.401(b) (Supp.).[3] "We review a trial court's decision to grant or deny an extension of the dismissal date under an abuse of discretion standard." *In re A.B.*, No. 06-20-00073-CV, 2021 WL 1216884, at *8 (Tex. App.—Texarkana Apr. 1, 2021, no pet.) (mem. op.) (citing *In re A.S.*, No. 12-16-00104-CV, 2016 WL 5827941, at *1 (Tex. App.—Tyler Sept. 30, 2016, no pet.) (mem. op.) (citing *In re A.J.M.*, 375 S.W.3d 599, 604 (Tex. App.—Fort Worth 2012, pet. denied)). "The focus on granting this extension 'is on the needs of the child.'" *Id*. (quoting *In re A.S.*, 2016 WL 5827941, at *2).

---

[3]The Texas Legislature recently amended this statute, and the amendment will take effect on September 1, 2021. *See* Act of May 15, 2021, 87th Leg., R.S., ch. 8 (H.B. 576) (to be codified at TEX. FAM. CODE § 263.401).

The final hearing in this case was set for March 4, 2021, which was also the one-year dismissal date under Section 263.401 of the Texas Family Code. At trial, Mother orally moved for a continuance and extension of the dismissal date. She argued that she had provided the name of a family member as a potential placement for the children and would agree to sign over permanent managing conservatorship to that family member. Mother argued that the dismissal date should be extended "so that family placement [could] be fully explored prior to termination of parental rights." The trial court denied Mother's motion after the Department's counsel stated, "It's my understanding the paternal aunt was supposed to be in contact with the [D]epartment, was supposed to do some address changes. She had multiple months to do this, that has not occurred."

On appeal, Mother argues that D.R. wanted to be placed with her, that she completed services offered by the Department, that the Department did not amend the service plan to address Mother's continued needs, and that it was not in the best interests of the children to be placed with foster parents that did not want to adopt them. Mother does not argue on appeal that any family member sought to take the children in.

We find no extraordinary circumstances in this case that required the trial court to extend the dismissal deadline. Mother argues that the Department's service plan should have done something more to ensure that she remained drug free during the pendency of the case. Yet, "when a parent, through her own choices, fails to comply with a service plan and then requests an extension of the statutory dismissal date in order to complete the plan, the trial court does not abuse its discretion by denying the extension." *In re A.B.*, 2021 WL 1216884, at *8 (quoting

13

*In re A.S.*, 2016 WL 5827941, at *2). Even though D.R. loved Mother and the foster family was not willing to adopt the children, the trial court could have found that Mother's drug use was unlikely to improve and that her continued interaction with the children was not in their best interests.

We conclude that the trial court could have determined that Mother failed to show how granting the extension would have been in the children's best interests. The "clear preference is to complete the process within the one-year period." *Id.* (quoting *In re A.J.M.*, 375 S.W.3d at 605). "Because the statutory language prefers finality to suit and because we cannot say the trial court abused its discretion in denying [the] extension," we overrule Mother's point of error. *Id.* (quoting *In re A.J.M.*, 375 S.W.3d at 605).

## IV. Any Error in Admitting Drug Test Results Was Rendered Harmless by Substantially Similar Testimony Admitted Without Objection

We have previously decided that the drug test results were improperly admitted as exhibits under the business-records exception in a parental-rights termination case because they indicated a lack of trustworthiness where the affidavit contained "no information as to the qualifications of the person or the equipment used, the method of administering the test, and whether the test was a standard one for the particular substance." *In re K.C.P.*, 142 S.W.3d 574, 580 (Tex. App.—Texarkana 2004, no pet.). Relying on *K.C.P.*, Mother argues that the trial court erred in admitting the drug test results because the Department's business record affidavit in this case lacked the same information as the affidavit in *K.C.P.* The Department argues that any error in admitting the drug test results was rendered harmless by substantially similar testimony admitted without objection. We agree.

14

The Department's petition was filed on March 4, 2020, and Stuart testified that the case was assigned to her because mother had admitted to methamphetamine use. Without objection, Stuart testified to the following drug test requests and results:

> June 11th [Mother] didn't go. June the 17th she went and it was negative and that was a UA. July 13th she didn't go. July 27th she went -- no, I'm sorry, July 27th she didn't go. I sent her for a hair/UA. August the 11th she went. She had -- hair was positive for meth and her UA was negative. August the 24th she didn't go. September 11th she didn't go. September 21st she went and it was a dilute negative. October the 8th she went. It was negative UA, positive hair. October 22nd she did not go. November 12th she did not go. November 30th her UA was positive for meth. December 10th she was negative. December 28th she was negative. January 13th her UA was negative and her hair was positive. January 21st her UA was negative and she was sent twice in February, February 22nd and February 25th, and she didn't go neither day.

Stuart also testified, without objection, that Mother admitted to using drugs when her test results were positive.

A judgment may not be reversed "on the ground that the trial court made an error of law unless the court of appeals concludes that the error complained of: (1) probably caused the rendition of an improper judgment; or (2) probably prevented the appellant from properly presenting the case to the court of appeals." TEX. R. APP. P. 44.1(a). The general rule is "[e]rror in the admission of testimony is deemed harmless and is waived if the objecting party subsequently permits the same or similar evidence to be introduced without objection." *In re K.R.*, No. 13-17-00281-CV, 2017 WL 4837850, at *5 (Tex. App.—Corpus Christi Oct. 26, 2017, pet. denied) (mem. op.) (quoting *Volkswagen of Am., Inc. v. Ramirez*, 159 S.W.3d 897, 907 (Tex. 2004)). Because Stuart's testimony contained substantially the same information that was shown on the drug test results attached to the business records affidavit and Mother failed to object to

15

this testimony, we find that the admission of the drug test results was harmless. As a result, we overrule Mother's last point of error.

## V.    Conclusion

We affirm the trial court's judgment.

Scott E. Stevens
Justice

Date Submitted:    July 28, 2021
Date Decided:    August 5, 2021

16