# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## ON MOTION FOR REHEARING

## NO. 03-22-00190-CV

**R. J. and A. D. M., Appellants**

**v.**

**Texas Department of Family and Protective Services, Appellee**

### FROM THE 53RD DISTRICT COURT OF TRAVIS COUNTY
### NO. D-1-FM-20-005379, THE HONORABLE JAN SOIFER, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

After considering R.J.'s motion for rehearing, we deny the motion but withdraw our August 11, 2022 opinion and judgment and substitute the following opinion and judgment in their place.

R.J. (Mother) and A.D.M. (Father) appeal from the trial court's final decree terminating their parental rights to their child H.M., who was born in May 2019, and their twins J.F.M. and M.G.M., who were born in September 2020.[1] In their appellate issues, the parents challenge the trial court's predicate-ground findings. *See* Tex. Fam. Code § 161.001(b)(1)(N)

---

[1] We refer to the parents and their children by their initials or as Mother, Father, Child, and the Twins. *See* Tex. Fam. Code § 109.002(d); Tex. R. App. P. 9.8.

(constructively abandoning), (O) (failing to comply with court-ordered services). For the following reasons, we affirm the trial court's final decree of termination.

## BACKGROUND

In December 2019, Mother and seven-month-old Child came to Texas from South Carolina. A short time later, Father also came to Texas, and Mother became pregnant with the Twins. Mother did not receive prenatal care during her pregnancy with the Twins,[2] and on September 27, 2020, she gave birth prematurely to the Twins, who were admitted to the NICU.

After investigating a report that Mother and one of the Twins had tested positive for amphetamine at the hospital, the Department of Family and Protective Services filed an original petition concerning the Twins. The trial court appointed the Department as the temporary managing conservator of the Twins, and the Department placed the Twins with a foster mother before they were discharged from the hospital. During its investigation, the Department became aware of Child but was unable to locate her. Mother and Father initially provided inconsistent information, including Mother representing that "they were just passing through" and that they "actually were residing in South Carolina" and Father representing that

---

[2] When asked at trial why she did not get prenatal care, Mother testified:

One, it was my sixth pregnancy. Pretty much accustom and aware of my body's changes and stuff like that. I knew if there was any concern. I—I know, more or less, my body. And if there was a concern, I would know to get medical help. And I just—I had a genuine fear of having a child here in Texas and CPS getting involved. It was a fear.

Mother also testified that she knew she was pregnant but not that she was having twins.

2

Child was in South Carolina.[3]  The Department amended its petition to include Child and was granted a writ of attachment as to Child.  Around that time, Mother and Father turned Child over to the Department, and the Department placed Child in a fictive kinship home.

During the Department's case, the trial court ordered Mother and Father to participate in services, including random drug testing, a psychological evaluation, individual therapy, and a nurturing or protective parenting program.  They also were ordered to obtain and maintain employment or income to meet their own and their children's needs, to obtain and maintain safe and appropriate housing, to maintain communications with the assigned caseworker, and to notify the Department within 24 hours of any change in their contact information.  Alternatively to obtaining and maintaining employment or income, the parents could provide proof that they were able to meet basic needs through public assistance.  The trial court also ordered supervised visits with the children.

In an agreed order, the trial court extended the dismissal date, and a bench trial occurred virtually March 22 to 24, 2022.  The witnesses included Mother; Father, who was incarcerated; a Department caseworker and investigator; a police officer, who testified about his arrests of Mother and Father during the case; the children's paternal aunt (Aunt), who lived in South Carolina and was caring for the children; and the Twins' foster mother, who had cared for the Twins from their discharge from the hospital until they were placed with Aunt.  The Department sought to terminate the parents' rights so that Aunt could adopt them.  The evidence showed that the children were placed with Aunt about one month before trial, that they were

---

[3]  The Department investigator testified that Father initially "denied knowledge of another child" but "did eventually admit that there was another child and claimed that child was in South Carolina with family."

3

doing well in her care, and that she was willing to maintain contact between the parents and children if parental rights were terminated and she adopted the children.

The Department investigator testified about her investigation and the children's removal from the parents. She testified about the parents' lack of cooperation with locating Child and the Department's concerns based on drug test results, Mother's drug use history, Department involvement with her older children, and Father's criminal history. Besides Child and the Twins, Mother has two teenage daughters who live with their maternal grandmother and a son who lives with his maternal grandfather.[4] Mother's parental rights to her three other children have not been terminated, but she has not cared for them in some time. In 2015, Mother attempted to remove her daughters from her mother's care, but they stayed with their grandmother after the Department became involved.[5] In 2018, the Department brought a case concerning Mother's son because Mother allegedly was using illegal drugs during her pregnancy with her son and after his birth. That case concluded with her son being placed with his grandfather.

The Department caseworker testified about the services that the parents were court-ordered to complete and the services that they did not complete, including not doing required drug testing. Neither parent complied with required hair follicle tests. Mother completed 4 of 41 required drug tests, and Father completed 9 of 40 required drug tests. The

---

[4] Mother also had a son who died when he was about five months old.

[5] Mother testified that her daughters began living with her mother because she "was going through a really hard time after [her] son passed away."

4

caseworker testified that one or both parents only participated in 33 of 74 possible visits with the children.[6]

The officer testified about his arrest of Mother on March 8, 2022 for possession of a controlled substance, methamphetamine, and fraudulent possession of identifying information. Mother "was in a hotel room that was being rented fraudulently" and that contained methamphetamine and multiple credit cards.[7] The officer also testified that in January 2021, he arrested Father for driving a stolen vehicle and possessing a narcotic. The officer searched and observed methamphetamine on Father. At trial, Father invoked his Fifth Amendment privilege against self-incrimination as to each question that he was asked, except that he testified that he was the children's father and that he had one other child.[8] The Department's questions to Father included how many times he was arrested after Child was born, whether he and Mother had used methamphetamine around Child, whether he was able to provide for the children, where he was living before being in jail, whether he hid Child from the Department after the Twins were removed, whether the children were removed "due to drug concerns," and whether he had completed court-ordered services.

As to Mother's compliance with the court-ordered services, Mother admitted that she was not in compliance but provided excuses including at times breaking phones and lacking access to WiFi and transportation. Mother testified that she had been living in a hotel room for

---

[6] After the children were placed in Aunt's care, the parents generally had contact with the children by telephone and video chat several times a week.

[7] Mother testified that "somebody else rented" the hotel room and that she "was just there to take a shower" and denied having any controlled substances on her.

[8] Father, who was incarcerated at the time of trial, did not provide further testimony about that child.

two weeks leading up to trial, that she had lived in different hotels for about half of the case, that she had rented a room with Father for part of the case, that she had a vehicle for "a very brief moment" during the case, and that she relied on friends for rides. Besides being arrested shortly before trial, Mother was arrested in November 2021 when methamphetamine was found in a vehicle in which Mother was a passenger. Mother invoked the Fifth Amendment when asked the last time she possessed methamphetamine and about domestic violence between her and Father. Although she admitted to using marijuana when she was pregnant with the Twins, Mother denied using any other illegal drugs.

In its final decree of termination, the trial court terminated both parents' parental rights, finding that Father and Mother constructively abandoned the children, *see* Tex. Fam. Code § 161.001(b)(1)(N); that they failed to comply with the court-ordered services, *see id.* § 161.001(b)(1)(O); and that it was in the children's best interest for parental rights to be terminated, *see id.* § 161.001(b)(2). The parents' appeals followed.

## ANALYSIS

*Standard of Review*

To terminate parental rights under section 161.001, the Department has the burden to prove one of the predicate grounds in subsection (b)(1) and that termination is in the best interest of the child. *See id.* § 161.001(b)(1), (2); *In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003). The applicable standard of proof is clear and convincing evidence. Tex. Fam. Code § 161.206(a); *see In re J.F.C.*, 96 S.W.3d 256, 263 (Tex. 2002) (explaining that "[d]ue process requires the application of the clear and convincing evidence standard of proof in parental termination cases"). The clear and convincing evidence standard is "that measure or degree of

6

proof which will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." *In re C.H.*, 89 S.W.3d 17, 23 (Tex. 2002) (quoting *State v. Addington*, 588 S.W.2d 569, 570 (Tex. 1979)); *see* Tex. Fam. Code § 101.007 (defining "clear and convincing evidence").

"In conducting a legal-sufficiency review, the reviewing court cannot ignore undisputed evidence contrary to the finding, but must otherwise assume the factfinder resolved disputed facts in favor of the finding." *In re A.C.*, 560 S.W.3d 624, 630–31 (Tex. 2018). Legal sufficiency review of the evidence to support a termination finding requires a court to look at all the evidence in the light most favorable to the finding and consider undisputed contrary evidence to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true. *Id.*

In reviewing the factual sufficiency of the evidence under the clear-and-convincing standard, we consider and weigh disputed evidence contrary to the finding against all the evidence favoring the finding. *Id.* at 631; *see In re J.O.A.*, 283 S.W.3d 336, 345 (Tex. 2009). "Evidence is factually insufficient if, in light of the entire record, the disputed evidence a reasonable factfinder could not have credited in favor of a finding is so significant that the factfinder could not have formed a firm belief or conviction that the finding was true." *In re A.C.*, 560 S.W.3d at 631; *see In re J.O.A.*, 283 S.W.3d at 345. We must give due deference to the factfinder's findings, and we cannot substitute our own judgment for that of the factfinder. *In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006); *see In re A.B.*, 437 S.W.3d 498, 503 (Tex. 2014) (noting that when reviewing termination order, appellate courts defer to "factfinder who, having full opportunity to observe witness testimony first-hand, is the sole arbiter when assessing the credibility and demeanor of witnesses").

7

*Court-Ordered Services*

In their respective two issues, Mother and Father challenge the predicate-ground findings against them, but we need only review their second issues that challenge the trial court's findings pursuant to subsection (O). *See* Tex. Fam. Code § 161.001(b)(1)(O); *In re A.V.*, 113 S.W.3d at 362; *see also In re N.G.*, 577 S.W.3d 230, 232–33, 237 (Tex. 2019) (explaining that only one predicate ground is necessary to support termination of parental rights when there is also best interest finding but requiring review of endangerment findings).

To terminate parental rights under Subsection (O), the Department must show that: (1) the child was removed under chapter 262 of the Texas Family Code for abuse or neglect, (2) the child had been in the permanent or temporary managing conservatorship of the Department for at least nine months, and (3) the parent "failed to comply with the provisions of a court order that specifically established the actions necessary for the parent to obtain the return of the child." *See* Tex. Fam. Code § 161.001(b)(1)(O). Neither parent disputes that the children were in the conservatorship of the Department for more than nine months or that they did not comply with court-ordered services, but they challenge the sufficiency of the evidence to support the trial court's finding that the children were removed for abuse or neglect.

In the context of subsection (O), the words abuse and neglect are "used broadly." *In re E.C.R.*, 402 S.W.3d 239, 248 (Tex. 2013). "[B]ecause chapter 262 uses the standard of 'danger to the physical health or safety of the child,' a phrase 'centered on risk, rather than just a history of actual abuse or neglect,' abuse or neglect 'necessarily includes the risks or threats of the environment in which the child is placed.'" *T.M. v. Texas Dep't of Fam. & Protective Servs.*, No. 03-21-00174-CV, 2021 Tex. App. LEXIS 8226, *26 (Tex. App.—Austin Oct. 8, 2021, no pet.) (mem. op.) (quoting *In re E.C.R.*, 402 S.W.3d at 247–48). Further, "[w]hether a child was

8

removed for abuse or neglect is a fact-specific inquiry." *Id.* (citing *In re S.M.R.*, 434 S.W.3d 576, 583 (Tex. 2014)). And "[a]pplying well-established rules of statutory construction, subsection (O) does not require that the parent who failed to comply with a court order be the same person whose abuse or neglect of the child warranted the child's removal." *See In re D.R.J.*, 395 S.W.3d 316, 320 (Tex. App.—Fort Worth 2013, no pet.) (citing *In re S.N.*, 287 S.W.3d 183, 188 (Tex. App.—Houston [14th Dist.] 2009, no pet.)).

Father argues that the evidence was insufficient because the Department's "suspicion and concerns" at the hospital where Mother had just given birth to the Twins were "based only" on Mother's "past use and positive tests," Father's "past criminal history," and on "amphetamines (which the Department did not prove was from an illicit source)" and that the evidence at trial was that Child was "completely safe and free of harm" at the time of removal. Mother similarly argues that the Department failed to introduce any competent evidence of abuse or neglect at the time the Department removed the children. Mother relies on the Department's failure to introduce "drug test or medical documentation" showing positive drug tests; her testimony denying drug use; the evidence that "over-the-counter medications can lead to a positive result for amphetamines," that the Twins did not exhibit withdrawal symptoms, and that Child "appeared healthy, dressed appropriately, interacted with her parents appropriately, and did 'all the things that a normal one-year-old would do'" when removed from her parents; and the testimony from the investigator, the caseworker, and Aunt that they had not observed the parents appearing to be under the influence of drugs.

The trial court, however, took judicial notice of its file. In its ex parte order as to the Twins, the trial court found that there was "an immediate danger to the physical health or safety of [the Twins]," and in its ex parte order as to Child, the trial court found that there was

9

"an immediate danger to the physical health or safety of the Child [H.M.] or that the Child has been [the] victim of neglect or sexual abuse and that continuation in the home would be contrary to the Child's welfare." Similarly, in its temporary orders as to the Twins and Child, the trial court found that there was "a danger to the physical health and safety of the child which was caused by an act or failure to act of the persons entitled to possession of the child and for the child to remain in the home is contrary to the welfare of the child" and that "the urgent need for protection required the immediate removal of the child."

The trial court reasonably could have relied on its findings in these orders to find that the children were removed for abuse or neglect under chapter 262. *See A.B. v. Texas Dep't of Fam. & Protective Servs.*, No. 03-19-00593-CV, 2020 Tex. App. LEXIS 962, at *11 (Tex. App.—Austin Feb. 5, 2020, pet. denied) (mem. op.) ("A trial court's findings in its previous orders may be sufficient to support the third prong of subsection (O)." (citing *In re E.C.R.*, 402 S.W.3d at 248–49)); *D.T. v. Texas Dep't of Fam. & Protective Servs.*, No. 03-18-00770-CV, 2019 Tex. App. LEXIS 2797, at *9–11 (Tex. App.—Austin April 9, 2019, no pet.) (mem. op.) (relying in part on findings in trial court's temporary orders to conclude that evidence was sufficient to support that child was removed for abuse or neglect); *In re J.S.G.*, No. 14-08-00754-CV, 2009 Tex. App. LEXIS 3224, at *19–20 (Tex. App.—Houston [14th Dist.] May 7, 2009, no pet.) (mem. op.) (relying in part on trial court's temporary orders concluding that children faced danger to their physical health or safety and substantial risk of continuing danger if returned home to conclude that evidence established that children were removed "as a result of neglect"); *In re A.A.A.*, 265 S.W.3d 507, 516 (Tex. App.—Houston [1st Dist.] 2008, pet. denied) (considering trial court's temporary orders finding "continuing

danger to the physical health or safety of the child if returned to the parent" as evidence that child was removed because of neglect).

The trial court also could have credited the evidence about the Department's initial involvement with the children. Mother admitted that the Department became involved with the children because of its concerns with drug test results and use, that she had used marijuana when she was pregnant with the Twins, and that she did not receive prenatal care for the twins. *See W.D. v. Texas Dep't of Family & Protective Servs.*, No. 03-14-00581-CV, 2015 Tex. App. LEXIS 1063, at *4 (Tex. App. – Austin 2015, no pet.) (mem. op.) (noting that "[d]rug abuse during pregnancy constitutes conduct that endangers a child's physical and emotional well-being" (quoting *In re M.R.J.M.*, 280 S.W.3d 494, 503 (Tex. App.—Fort Worth 2009, no pet.))); *In re M.B.*, No. 12-04-00350-CV, 2005 Tex. App. LEXIS 9939, at *10 (Tex. App.—Tyler Nov. 30, 2005, no pet.) (mem. op.) (concluding that evidence that child tested positive for cocaine and methadone established that child removed from parents for neglect under subsection O).

The Department's investigator also testified that the Department became involved when it received a report that Mother and one of the Twins tested positive for amphetamine when the Twins were born; that Mother "did not provide any sort of explanation for why she tested positive at the time of birth"; that the investigator asked the parents to submit to drug testing, but they did not do so; and that the parents provided inaccurate information about Child, resulting in the Department seeking and being granted a writ of attachment. *See In re A.M.*, No. 09-18-00295-CV, 2019 Tex. App. LEXIS 117, at *16 (Tex. App.—Beaumont Jan. 10, 2019, no pet.) (mem. op.) (concluding that parent's "conflicting answers concerning the whereabouts of [child]" when parent's children were at vulnerable ages and unable to protect themselves as

11

supporting that children removed for abuse or neglect); *W.D.*, 2015 Tex. App. LEXIS 1063, at *4.

Further, the trial court reasonably could have drawn negative inferences from the parents' invocation of the Fifth Amendment in response to questions. *See* Tex. R. Evid. 513(c); *Wilz v. Flournoy*, 228 S.W.3d 674, 677 (Tex. 2007) ("[T]he jury in this civil case was free to draw negative inferences from the Flournoys' repeated invocations of the Fifth Amendment."); *In re A.G.*, No. 11-13-00182-CV, 2013 Tex. App. LEXIS 15424, at *10 (Tex. App.—Eastland Dec. 20, 2013, no pet.) (mem. op.) (noting in context of parental-rights-termination case, that factfinder may draw negative inferences from witness's invocation of Fifth Amendment); *White v. Texas Dep't of Fam. & Protective Servs.*, No. 03-08-00411-CV, 2008 Tex. App. LEXIS 9508, at *13–14 (Tex. App.—Austin Dec. 19, 2008, no pet.) (mem. op.) (same). Father invoked the Fifth Amendment in response to questions asking him how many times he was arrested after Child was born, whether he and Mother used methamphetamine around Child, whether he observed Mother using illegal drugs while she was pregnant, whether he hid Child from the Department when the Twins were removed, and whether the children were removed "due to drug concerns." Mother invoked the Fifth Amendment when asked about domestic violence between her and Father and the last time she possessed methamphetamine.

Viewing the evidence under the applicable standards of review, we conclude that the evidence was legally and factually sufficient to support the trial court's finding that the children were removed for abuse or neglect. *See* Tex. Fam. Code § 161.001(b)(1)(O); *In re A.C.*, 560 S.W.3d at 630–31. We overrule Father's second issue and to the extent her second issue challenges this finding, we also overrule Mother's second issue.

*Investigator's Testimony*

As part of her second issue, Mother argues that the trial court erred in overruling Mother's objection to the investigator's testimony that she had "concerns" regarding drug test results from Mother, one of the Twins, and Child. Mother objected to this testimony because "the results are going to be calling for hearsay" and "[t]he concerns are based on hearsay." *See* Tex. R. Evid. 801(d) (defining hearsay as out-of-court statement offered to prove truth of matter asserted).

"We review a trial court's decision to admit or exclude evidence for an abuse of discretion." *A.B. v. Texas Dep't of Fam. & Protective Servs.*, No. 03-17-00658-CV, 2018 Tex. App. LEXIS 1790, at *7 (Tex. App.—Austin Mar. 9, 2018, no pet.) (mem. op.) (quoting *In re J.P.B.*, 180 S.W.3d 570, 575 (Tex. 2005)). "A trial court abuses its discretion when it acts in an arbitrary or unreasonable manner 'without reference to any guiding rules or principles.'" *Id.* (quoting *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985)).

Because the Department sought termination under subsection (O), the trial court reasonably could have admitted the investigator's testimony that the Department was concerned about the drug test results for the limited purpose of proving that the children were removed for abuse or neglect. *See R.P.*, 2021 Tex. App. LEXIS 8288, at *14–15 (concluding that trial court reasonably could have admitted affidavits over hearsay objection "for the limited purpose of proving that the children were removed for abuse or neglect" under chapter 262). Thus, we cannot conclude that the trial court abused its discretion in allowing this testimony.[9]

---

[9] Mother cites *In re K.C.P.*, 142 S.W.3d 574 (Tex. App.—Texarkana 2004, no pet.), as supporting her position that the challenged testimony was inadmissible. We find that case

*Affirmative Defense*

As part of her second issue, Mother also "asserts her affirmative defense—that she attempted to comply with the court-ordered services in good faith but was prevented from doing so through no fault of her own."

A court may not order termination under subsection (O) if the parent proves by a preponderance of the evidence that "the parent was unable to comply with specific provisions of the court order" and "the parent made a good faith effort to comply with the order and the failure to comply with the order is not attributable to any fault of the parent." Tex. Fam. Code § 161.001(d); *see In re Z.M.M.*, 577 S.W.3d 541, 542–43 (Tex. 2019) (discussing affirmative defense provided in section 161.001(d)); *R.S.S. v. Texas Dep't of Fam. & Protective Servs.*, No. 03-22-00076-CV, 2022 Tex. App. LEXIS 4864, at \*10–11 (Tex. App.—Austin July 15, 2022, no pet. h.) (mem. op.) (explaining that "[s]ection 161.001(d) is an affirmative defense to subsection (O) that places the burden of proof on the parent" and that "the parent must satisfy this burden for each specific provision of the court order that the State claims he failed to complete").

Mother relies on evidence of her reasons for being unable to comply with some of the court-ordered services. Mother testified, "[T]he Department set up services on the opposite side of town, notified parents of drug tests when they knew parents had no reliable access to phone or internet service, and set visits at a location that did not have bus service, even though it knew the parents had no vehicle." Mother relies on her testimony about how her first two

---

factually distinguishable. In that case, the issue concerned the admission of the actual records of the drug test results. *Id.* at 579–80. In contrast, in this case, the Department's representative did not testify as to what the drug test results were, and the records of the drug test results were not admitted.

attorneys and the first caseworker "failed her utterly"; about the difficulties that she faced with scheduling some of the court-ordered services; and about her lack of transportation, a reliable phone, and reliable internet service throughout the case.

Although some evidence showed that Mother tried to comply with some of the court-ordered services, the trial court reasonably could have inferred from other evidence that she had not made a good faith effort to comply with services, particularly required drug testing. The evidence showed that Mother only completed 4 of 41 required drug tests during the 18 months that the case was pending. The caseworker testified that she offered to transport the parents to drug testing that she requested at visits but that they declined her offer and that they responded to texts concerning visits but not to texts concerning drug testing. Further, the evidence showed that Mother was arrested shortly before trial for possession of methamphetamine and invoked the Fifth Amendment when she was asked the last time she possessed methamphetamine. The caseworker testified that she restarted all referrals in July 2021; offered transportation and provided bus passes to the parents; and offered a conference room at the Department to connect to WiFi, which they declined. The caseworker further testified that the parents did not let her know that they could not participate in virtual services.

Based on our review of the record, we conclude that the evidence is legally and factually sufficient to support that Mother did not prove by a preponderance of the evidence that she made a good faith effort to comply with the court-ordered services or that her failure to comply with the court-ordered services was "not attributable to any fault of [Mother]." *See* Tex. Fam. Code § 161.001(d); *R.S.S.*, 2022 Tex. App. LEXIS 4864, at *10–11. We overrule the remainder of Mother's second issue.

15

**CONCLUSION**

Having overruled the parents' two issues challenging the trial court's predicate ground findings under subsection (O), we affirm the trial court's final decree of termination.[10]

_____

Melissa Goodwin, Justice

Before Justices Goodwin, Baker, and Kelly

Affirmed on Motion for Rehearing

Filed: September 15, 2022

---

[10] Because we have concluded that the evidence was legally and factually sufficient to support termination under subsection (O) and overruled the parents' issues as to that finding, we do not reach the parents' first issues challenging the trial court's findings that they constructively abandoned the children. *See* Tex. Fam. Code § 161.001(b)(1)(N); *In re N.G.*, 577 S.W.3d 230, 232–33 (Tex. 2019).